UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| ANTHONY MASSARO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CASE NO. ___05-4087___ |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS; GUY JOHNSON; | ) | |
| JEFF McCHURCH;  JEFF PAPISH; | ) | |
| and ALBERT OSBORNE, | ) | |
| | ) | |
| Defendants. | ) | |

# COMPLAINT

Plaintiff, ANTHONY MASSARO, by his attorneys, Stoerzbach Morrison, P.C., complains of
the Defendants, ILLINOIS DEPARTMENT OF CORRECTIONS, GUY JOHNSON, JEFF
McCHURCH, JEFF PAPISH, and ALBERT OSBORNE, as follows:

## Common Count

### A. Jurisdiction and Venue.

1.      This Court's subject matter jurisdiction over Counts I through III is founded on
federal question jurisdiction under 28 U.S.C.  § 1343(a)(3) and (4), in that Plaintiff's case arises
under the civil rights laws of the United States, specifically 42 U.S.C. § 1983 and 42 U.S.C. § 2000e.

2.      Subject matter jurisdiction over Count IV is founded on supplemental jurisdiction
under 28 U.S.C.  §1367(a), in that said Count is so closely related to Plaintiff's claims in this action
within this Court's original federal question jurisdiction that they form part of the same case or
controversy under Article III of the United States Constitution.

3.     Pursuant to CD-IL Local Rule 40.1(F), Plaintiff files his Complaint in the Rock Island Division of the Central District of Illinois because this cause arises from Rock Island County, Illinois.

## B. The Parties.

1.     Plaintiff, Anthony Massaro, is currently a resident of Centralia, Illinois.

2.     Plaintiff is an employee of the Illinois Department of Corrections pursuant to Title VII of the Civil Rights Act of 1964, as amended.

3.     Defendant Illinois Department of Corrections (hereinafter "Employer") is a department of the State of Illinois and is an employer subject to the jurisdiction of Title VII of the Civil Rights Act of 1964, as amended.

4.     Plaintiff has been employed by Employer as a correctional officer since on or about September 15, 2003.

5.     At all material times, Plaintiff was employed by Employer at the East Moline Correctional Center in East Moline, Illinois.

6.     Plaintiff was at all material times satisfactorily performing the duties of his position.

7.     Defendants Johnson, McChurch, Papish and Osborne were at all material times supervisory employees of Employer and were acting under color of state law in the course of their employment with Employer.

8.     Johnson, McChurch, Papish, and Osborne were at all material times supervisory employees of Employer who had immediate or successively higher authority over Plaintiff. Furthermore, Papish was at all material times the vice president of the union local representing Plaintiff.

2

## C. Factual Averments.

1.    Johnson made unwanted sexual advances toward Plaintiff and engaged in other verbal conduct of a sexual nature toward Plaintiff, all despite the fact that Plaintiff repeatedly made it clear to Johnson that those types of comments and conduct were unwanted and unwelcome.

2.    Without limiting the generality of the foregoing, Johnson engaged in the following conduct of this nature beginning in the Summer of 2004 and continuing through August 16, 2005 when Johnson was discharged and Plaintiff was given a hardship transfer to Centralia Correctional Center:

(a)    One of Plaintiff's assigned duties was to guard a dorm of inmates and to obtain Johnson's signature on the logbook on a daily basis. Instead of signing the logbook and then going about his other duties, Johnson would regularly stay in Plaintiff's work area for extended periods of time each day. Johnson frequently and repeatedly went out of his way to be around Plaintiff at work for hours, staring at Plaintiff, flirting with Plaintiff, and attempting to engage Plaintiff in conversations about homosexual sex, even though he had no reason to be or remain in the same area with Plaintiff.  This conduct continued despite Plaintiff telling Johnson that he was not gay and that he wanted this to stop.   When Plaintiff would attempt to ignore Johnson's comments, Johnson became verbally abusive to Plaintiff.

(b)    Johnson told Plaintiff that Plaintiff "has a nice butt" and attempted to engage Plaintiff in conversation about the bodies of other male employees, commenting to Plaintiff, for example, that Johnson thought another male officer "had a nice brown butt."

(c)    Johnson asked Plaintiff to tell Johnson about Plaintiff's sexual fantasies and attempted to engage Plaintiff in conversation about watching the inmates in the showers and the size of the inmates' penises.

(d)    Johnson asked Plaintiff questions about whether Plaintiff was homosexual.

(e)    Johnson told Plaintiff that he thought Plaintiff "has sugar in his tank."

(f)    On February 13, 2005, Johnson asked Plaintiff if he was out of breath because he had been lying down in bed with the inmates.

(g)    On February 13, 2005, Johnson asked Plaintiff if he was interested in homosexual

3

sex.

(h)     On February 14, 2005, Johnson asked Plaintiff if Plaintiff was naked and attempted to converse with Plaintiff about homosexual sex.

(i)     On February 21, 2005, Johnson wrote down the URL for an internet website containing male homosexual pornography, gave it to Plaintiff, and suggested Plaintiff take it home and use it to masturbate.

(j)     On February 21, 2005, Johnson told Plaintiff that he did not understand why male to female transsexuals got a sex change operation because "it was like getting a girl."

(k)     On January 30, 2005, Johnson told other employees that Plaintiff had "sugar in his tank."

(l)     On December 4, 2004, Johnson called Plaintiff his "buddy" and rubbed Plaintiff's shoulders and attempted for approximately one hour to engage Plaintiff in a discussion of homosexual sex.

(m)    On December 4, 2004, Johnson told Plaintiff that he imagined him in a hot tub with other men with "sperm floating around" and that is why Plaintiff's hair is "so shiny."

(n)     On December 4, 2004, and on several other occasions, Johnson suggested to Plaintiff that Plaintiff was interested in Johnson sexually.

(o)     On December 4, 2004, Johnson told Plaintiff that he thought Plaintiff was having oral sex with the inmates and that the inmates "are cumming in your mouth."

(p)     On December 4, 2004, Johnson asked Plaintiff if Plaintiff was dancing for the inmates and said "Don't make me come up there and spank you."

(q)     On several occasions, Johnson asked Plaintiff if Plaintiff was dating another male officer and "which one was the girl."

(r)     On several occasions, Johnson told Plaintiff he thought he was "cute" and compared him to a character in the movie Shrek II.

(s)     Johnson asked Plaintiff if he wears "girl's underpants."

(t)     Johnson asked Plaintiff if he was going to the 2004 Christmas party and told Plaintiff to come to the party because Johnson was going to be there, and asked whether Plaintiff had plans to accompany other male officers to the party and asked "which one is going to be the girl?"

4

(u)     On several occasions, Johnson told Plaintiff he believed Plaintiff was interested in him sexually.

(v)     Johnson asked Plaintiff if he was having a "lovers' quarrel" with another male officer when the officer did not show up at work, and Johnson told Plaintiff that they should kiss and make up.

(w)     Johnson attempted to engage Plaintiff in a conversation about gay bars and asked if Plaintiff went to them.

3.      Approximately one month after the harassing behavior began, Plaintiff reported it to McChurch, Papish, and Osborne. Plaintiff was told by McChurch, Papish and Osborne that Johnson was probably gay and "coming out," and nothing was done about it.

4.      Papish, upon being made aware of Johnson's conduct towards Plaintiff, told Plaintiff: "You can either confront him or suck him off, and you're not the type to confront him." Papish then said: "Something must have happened to you as a kid, some janitor, school teacher or priest must have touched you or broke it off in you."

5.      Defendants failed to take timely and appropriate corrective action to stop the harassment.

6.      Johnson, McChurch, Papish, and Osborne frequently and repeatedly ridiculed Plaintiff for not (in his appearance and manner) fitting the masculine male stereotype; however, female employees who do not (in appearance and manner) fit the feminine female stereotype were not ridiculed by these supervisors.

7.      Plaintiff opposed these activities and complained to his supervisors, and when nothing was done Plaintiff complained about these activities to Employer's Internal Affairs department in the Spring of 2005.

5

8.    Because Plaintiff opposed and complained of said conduct, Johnson, McChurch, Papish, Osborne and other employees of Employer retaliated against Plaintiff.

9.    Without limiting the generality of the foregoing, Plaintiff was subjected to the following retaliatory behavior and actions by Employer after complaining to Employer about the conduct of Johnson and others:

(a)    Plaintiff was reassigned to a different shift (first shift) which was less favorable.

(b)    Papish insisted that he be the union representative who accompanied Plaintiff to Plaintiff's interviews with the Internal Affairs officers about Plaintiff's complaints, despite the fact that Papish was one of the perpetrators and despite Plaintiff's request for a different union representative.

(c)    In the interviews with Internal Affairs, Papish laughed out loud as Plaintiff gave his account to the investigators.

(d)    Papish repeatedly referred to Plaintiff (to Plaintiff and to others), in person and over the intercom at work, as "Sgt. Dangle" – a reference to a homosexual character in the television series "Reno 911."

(e)    Plaintiff's mail was thrown in the garbage, and Plaintiff's uniforms were taken and hidden, all by other employees.

(f)    Plaintiff's car tires were slashed.

(g)    Plaintiff received numerous telephone calls at his home from Employer's employees telling Plaintiff not to report the behavior.

(h)    Papish asked Plaintiff if he wore "pink hot pants," asked Plaintiff if he danced at and frequented the gay bars, and called Plaintiff gay.

(i)    Papish tried to rub soiled inmate underwear on Plaintiff and told Plaintiff to "file an incident report about that."

(j)    Employer assigned Plaintiff to search the cars of second-shift employees as they came in, and one of the officers directed Plaintiff to stay away from his car "with all of this going on."

(k)    McChurch attempted to physically intimidate Plaintiff by kicking in the door of the administration office, almost hitting Plaintiff, and then stood in front of Plaintiff with his chest puffed out staring at Plaintiff.

(l)     On May 13, 2005, after midnight, Plaintiff received telephone calls at home from men using feminine voices and then hanging up.

(m)     In May 2005, the other officers began treating Plaintiff differently by failing to cooperate with him, refusing to give Plaintiff important information about inmates, yelling at him, stating that Plaintiff was "wired," had a "camera in his nametag" and suggesting that employees should not talk to him.

(n)     Another officer said to Plaintiff in an angry tone of voice: " It must be fucking nice to pick what shift you're on."

(o)     Plaintiff was repeatedly called names by other officers, including "suck ass" and "Phony Tony."

(p)     On May 22, 2005, the Roll Call Officer intentionally pushed another officer into Plaintiff, spilling coffee all over Plaintiff, and said "it couldn't have happened to a better person."

(q)     On May 20, 2005, employees of Employer took photographs of Plaintiff's backside and said they were going to send them to Johnson to see if he could pick it out of a line-up.

(r)     Repeatedly Plaintiff was telephoned by other employees at work who would taunt him using effeminate voices and hang up.

(s)     After the Internal Affairs investigation began, Papish, McChurch and Osborne demanded that Plaintiff lie to Internal Affairs about their knowledge of the harassment and to leave their names out of it. Papish demanded that Plaintiff meet with McChurch to "get the story straight." McChurch called Plaintiff repeatedly to come over to McChurch's house. When Plaintiff went to McChurch's home, McChurch told Plaintiff to lie about his involvement and threatened Plaintiff by showing Plaintiff pictures of McChurch performing karate, saying: "I'm the best at karate, I'm a weightlifter, you need to listen to me."

(t)     Osborne came to Plaintiff's home and insisted that Plaintiff meet with him and Papish, and at the meeting Papish attempted to convince Plaintiff not to report the conduct and offered to help him get a lawyer and get "a lot of money out of this" if he cooperated.

(u)     Papish came to Plaintiff's home and attempted to intimidate Plaintiff into not reporting the behavior.

7

10.     As a result of the conduct of Johnson, McChurch, Papish and Osborne, Plaintiff was ostracized by fellow officers and employees and subjected to a barrage of offensive behavior and comments destroying his relationships with co-workers and interfering with his ability to perform his job as a correctional officer in the dangerous environment of a prison.

11.     Plaintiff's response to the unwelcome sexual advances and other verbal conduct of a sexual nature by Johnson was a motivating factor in tangible employment action taken against Plaintiff, including Plaintiff's transfer from one shift to another less favorable shift. After making a report of the conduct to Employer, Plaintiff was reassigned by Employer to first shift, a less favorable shift for Plaintiff. The shift change did not resolve Plaintiff's concerns because Plaintiff was still required to interact with Johnson on a regular basis, despite the reassignment.

12.     The conduct of the individual defendants was in callous disregard for Plaintiff's rights.

## COUNT I – TITLE VII (SEXUAL HARASSMENT)

### (Against Illinois Department of Corrections)

1.     Plaintiff restates and realleges the allegations of the Common Count of this Complaint as paragraph 1 of this Count I.

2.     Taken as a whole, the ridicule, unwanted sexual advances, and other conduct of a sexual nature, constituted an ongoing and continuing course of conduct and was severe and pervasive, had the purpose or effect of unreasonably interfering with Plaintiff's work performance and created an intimidating, hostile and offensive work environment for Plaintiff affecting the terms, conditions and privileges of his employment and substantially interfered with Plaintiff's ability to perform his job, all in violation of 42 U.S.C. § 2000e.

3.     Plaintiff subjectively perceived the harassment as sufficiently severe and pervasive to alter the conditions of his employment, and Plaintiff's subjective perception was objectively reasonable.

4.     The sexual advances and sexual conduct by Johnson, the ridicule by Johnson, McChurch, Papish and Osborne, and the transfer constituted sexual harassment and were based on Plaintiff's gender, male.

5.     Employer is vicariously liable to Plaintiff for such acts of its supervisors against Plaintiff.

6.     As a proximate result of the aforementioned employment discrimination by Defendant, Plaintiff suffered extreme emotional distress, was embarrassed, humiliated, intimidated and has suffered damages in the form of emotional pain and suffering, mental anguish and other damages.

7.     Furthermore, as a result of the aforementioned employment discrimination by Employer, Plaintiff has employed attorneys to investigate and prosecute this action and has, therefore, become obligated for reasonable legal fees and costs.

8.     On June 29, 2005, Plaintiff filed his charge as to the continuing act of discrimination with the Equal Employment Opportunity Commission, Chicago District Office.

9.     On July 26, 2005, the EEOC determined that it would be unable to complete its process within 180 days of the filing of Plaintiff's charge and issued to Plaintiff a Notice of Right to Sue, a true and correct copy of which is attached hereto as Exhibit A.

10.     Plaintiff received the Notice of Right to Sue on August 2, 2005.

11.     Fewer than ninety days have elapsed since receipt by Plaintiff of said Notice of Right

9

to Sue.

12.     Plaintiff is entitled to file a civil action in a United States District Court for adjudication of his employment discrimination claims.

WHEREFORE, Plaintiff demands judgment in his favor and against the Illinois Department of Corrections for the following relief:

1.     An award of consequential and compensatory damages in an amount sufficient to make Plaintiff whole;

2.     An award of punitive or exemplary damages in the amount of the maximum allowed by law in order to deter such conduct in the future;

3.     An award of Plaintiff's reasonable attorneys' fees and court costs;

4.     An order permanently enjoining the Illinois Department of Corrections, its assigns, successors, agents, employees and those acting in concert with them from engaging in sexual harassment or retaliation against Plaintiff; and

5.     Such other and further relief as this Court deems just and reasonable.

## COUNT II – TITLE VII (RETALIATION)

### (Against Illinois Department of Corrections)

1.     Plaintiff restates and realleges the allegations of the Common Count of this Complaint as paragraph 1 of this Count II.

2.     Plaintiff restates and realleges the allegations of paragraphs 2 through 12, inclusive, of Count I of this Complaint as paragraph 2 of this Count II.

3.     The above-referenced conduct of the Illinois Department of Corrections constitutes retaliation against Plaintiff because Plaintiff opposed a discriminatory employment practice or made a charge, assisted or participated in an investigation, proceeding, or hearing into a discriminatory

employment practice, in violation of 42 U.S.C. § 2000e-3(a).

WHEREFORE, Plaintiff demands judgment in his favor and against the Illinois Department of Corrections for the following relief:

1.   An award of consequential and compensatory damages in an amount sufficient to make Plaintiff whole;

2.   An award of punitive or exemplary damages in the amount of the maximum allowed by law in order to deter such conduct in the future;

3.   An award of Plaintiff's reasonable attorneys' fees and court costs;

4.   An order permanently enjoining the Illinois Department of Corrections, its assigns, successors, agents, employees and those acting in concert with them from engaging in sexual harassment or retaliation against Plaintiff; and

5.   Such other and further relief as this Court deems just and reasonable.

## COUNT III – 42 U.S.C. § 1983

### (Against Johnson, McChurch, Papish and Osborne)

1.   Plaintiff restates and realleges the allegations of the Common Count of this Complaint as paragraph 1 of this Count III.

2.   The sexual advances by Johnson, the ridicule by Johnson, McChurch, Papish and Osborne, and the transfer constituted sexual harassment and disparate treatment, were intentional, and were based on Plaintiff's gender, male.

3.   The conduct of the individual defendants subjected Plaintiff to a deprivation of his rights, privileges and immunities secured by the Constitution and laws of the United States, including but not limited to the following:  Plaintiff's Fourteenth Amendment right to equal

11

protection, to be free from invidious discrimination based upon gender, and liberty right to be free from generalized government harassment.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants Johnson, McChurch, Papish and Osborne for the following relief:

1.    An award of consequential and compensatory damages in an amount sufficient to make Plaintiff whole;

2.    An award of punitive or exemplary damages in the amount of the maximum allowed by law in order to deter such conduct in the future;

3.    An award of Plaintiff's reasonable attorneys' fees and court costs; and

4.    Such other and further relief as this Court deems just and reasonable.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against all Defendants)

1.    Plaintiff restates and realleges the allegations of the Common Count of this Complaint as paragraph 1 of this Count IV.

2.    Defendants' conduct was extreme and outrageous, beyond all bounds of decency usually tolerated by a civilized society; Defendants either intended that this conduct should inflict severe emotional distress, or knew that there was a high probability that this conduct would cause severe emotional distress; and Defendants' conduct did in fact cause Plaintiff to suffer severe emotional distress.

WHEREFORE, Plaintiff demands judgment in his favor and against the Defendants for the following relief:

1.    An award of consequential and compensatory damages in an amount sufficient to make Plaintiff whole;

12

2.      An award of punitive or exemplary damages in an amount sufficient to deter such conduct in the future; and

3.      Such other and further relief as this Court deems just and reasonable.

ANTHONY MASSARO
Plaintiff

s/ DANIEL S. ALCORN
#06209425
Attorney for Plaintiff
STOERZBACH MORRISON, P.C.
139 South Cherry Street
P. O. Box 1328
Galesburg, IL  61402-1328
Telephone:  309/341-6000
Telefax:      309/343-7500
alcornd@galesburglaw.com

## JURY DEMAND

Plaintiff demands trial by jury of all issues properly triable thereto.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE
(Issued on request)

| To: | Anthony Massaro | From: |
|---|---|---|
| | 810a 2nd St. | Equal Employment Opportunity Commission |
| | Colona, Illinois 61241 | Chicago District Office |
| | | 500 West Madison, Suite 2800 |
| | | Chicago, Illinois 60661 |
| | Certified: 7001 1940 0003 8829 2961 | |

☐ On behalf of a person aggrieved whose identity is CONFIDENTIAL
(29 C.F.R. 1601.7(a))

| Charge Number | EEOC Representative | Telephone Number |
|---|---|---|
| 210-2005-06545 | Eileen Sotak, Enforcement Supervisor | (312) 353-1316 |

( See the additional information attached to this form.)

**TO THE PERSON AGGRIEVED:** This is your NOTICE OF RIGHT TO SUE. It is issued at your request. If you intend to sue the respondent(s) named in your charge, YOU MUST DO SO WITHIN NINETY (90) DAYS OF YOUR RECEIPT OF THIS NOTICE. OTHERWISE YOUR RIGHT TO SUE IS LOST.

☐ More than 180 days have expired since the filing of this charge.

☒ Less than 180 days have expired since the filing of this charge, but I have determined that the Commission will be unable to complete its process within 180 days from the filing of the charge.

☒ With the issuance of this NOTICE OF RIGHT TO SUE, the Commission is terminating its process with respect to this charge.

☐ It has been determined that the Commission will continue to investigate your charge.

☐ **ADEA:** While Title VII and the ADA require EEOC to issue this notice of right to sue before you can bring a lawsuit, you may sue under the Age Discrimination in Employment Act (ADEA) any time 60 days after your charge was filed until **90 days after you received notice that EEOC has completed action on your charge.**

☐ Because EEOC is closing your case, your lawsuit under the ADEA must be brought within 90 days of your receipt of this notice. Otherwise, your right to sue is lost.

☐ **EEOC is continuing its investigation.** You will be notified when we have completed action and, if appropriate, our notice will include notice of right to sue under the ADEA.

☐ **EPA:** While Title VII and the ADA require EEOC to issue this Notice of Right to Sue before you can bring a lawsuit, you already have the right to sue under the Equal Pay Act (EPA) (You are not required to complain to any enforcement agency before bringing an EPA suit in court). EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

On Behalf of the Commission

_7/26/05_
(Date)

John P. Rowe, District Director

**EXHIBIT**
A

Enclosures
Information Sheet
Copy of Charge

cc Respondent(s)    **Illinois Corrections Department**

EEOC Form 161-D (Test 10/96)

05-4087

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

**E-FILED**
Monday, 24 October, 2005  04:17:51 PM
Clerk, U.S. District Court, ILCD

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

Anthony Massaro

**DEFENDANTS**

Illinois Department of Corrections; Guy Johnson; Jeff McChurch; Jeff Papish and Albert Osborne

**(b)** County of Residence of First Listed Plaintiff   Marion
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Sangamaon
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Daniel S. Alcorn of Stoerzbach Morrison, P.C.
P. O. Box 1328, Galesburg, IL 61402-1328  309-341-6000

Attorneys (If Known)

Unknown

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN  (Place an "X" in One Box Only)

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
another district
(specify)

☐ 6  Multidistrict
Litigation

☐ 7  Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity):**
42 U.S.C. Sections 1983 & 2000e, Civil Rights Violation
Brief description of cause: Plaintiff was sexually harassed by a supervisor and suffered adverse employment action for reporting the harassment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $undetermined

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
10/24/2005

SIGNATURE OF ATTORNEY OF RECORD
s/DANIEL S. ALCORN

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.       (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.      Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.     Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.      Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.     Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example:    U.S. Civil Statute: 47 USC 553
                                              Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.   Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.