**E-FILED**
Friday, 13 January, 2006  10:29:08 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| ANTHONY MASSARO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CASE NO. 05-4087 |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS; GUY JOHNSON; | ) | |
| JEFF McCHURCH;  JEFF PAPISH; | ) | |
| and ALBERT OSBORNE, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Now comes the Plaintiff, Anthony Massaro, by Stoerzbach Morrison, P.C., his attorneys, and for his Motion for Leave to File Amended Complaint, pursuant to FRCP 15(a), states as follows:

1.      Plaintiff filed his Complaint in this case on October 24, 2005.

2.      On December 30, 2005, Defendant Illinois Department of Corrections (hereinafter "the Department") filed its Motion to Strike and Partial Motion to Dismiss asking the Court to dismiss Plaintiff's claim of intentional infliction of emotional distress against the Department in Count IV and Plaintiff's prayer for punitive damages under Title VII against the Department in Counts I and II.

3.      Plaintiff simultaneously herewith files his Responses to the Department's Motion to Strike and Partial Motion to Dismiss.

4.      Plaintiff desires to amend his Complaint to reflect that Count IV is directed only at the individual Defendants and to delete his prayer for punitive damages against the Department in Counts I and II.

5.      None of the Defendants would be prejudiced by the filing of the Amended Complaint.

6.      None of the individual Defendants have filed a response to Plaintiff's Complaint as of the date of this Motion, and Defendant Guy Johnson has not yet been served with process.

WHEREFORE, Plaintiff prays that this Court grant him leave to file an Amended Complaint in the form attached hereto as Exhibit 1.

Respectfully submitted,

s/ DANIEL S. ALCORN
#06209425
Attorney for Plaintiff
STOERZBACH MORRISON, P.C.
139 South Cherry Street
P. O. Box 1328
Galesburg, IL  61402-1328
Telephone:  309/341-6000
Telefax:      309/343-7500
alcornd@galesburglaw.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 13, 2006, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney for Defendant Illinois Department of Corrections, Sarah R. Kerley, Assistant Attorney General, 500 South Second Street, Springfield, IL 62706.

s/ DANIEL S. ALCORN
#06209425
Attorney for Plaintiff
STOERZBACH MORRISON, P.C.
139 South Cherry Street
P. O. Box 1328
Galesburg, IL 61402-1328
Telephone: 309/341-6000
Telefax:    309/343-7500
alcornd@galesburglaw.com

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| ANTHONY MASSARO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CASE NO. 05-4087 |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS; GUY JOHNSON; | ) | |
| JEFF McCHURCH;  JEFF PAPISH; | ) | |
| and ALBERT OSBORNE, | ) | |
| | ) | |
| Defendants. | ) | |

# AMENDED COMPLAINT

Plaintiff, ANTHONY MASSARO, by his attorneys, Stoerzbach Morrison, P.C., complains of

the Defendants, ILLINOIS DEPARTMENT OF CORRECTIONS, GUY JOHNSON, JEFF

McCHURCH, JEFF PAPISH, and ALBERT OSBORNE, as follows:

## **Common Count**

### **A.  Jurisdiction and Venue.**

1.     This Court's subject matter jurisdiction over Counts I through III is founded on

federal question jurisdiction under 28 U.S.C.  § 1343(a)(3) and (4), in that Plaintiff's case arises

under the civil rights laws of the United States, specifically 42 U.S.C. § 1983 and 42 U.S.C. § 2000e.

2.     Subject matter jurisdiction over Count IV is founded on supplemental jurisdiction

under 28 U.S.C.  §1367(a), in that said Count is so closely related to Plaintiff's claims in this action

within this Court's original federal question jurisdiction that they form part of the same case or

controversy under Article III of the United States Constitution.

3.     Pursuant to CD-IL Local Rule 40.1(F), Plaintiff files his Complaint in the Rock Island Division of the Central District of Illinois because this cause arises from Rock Island County, Illinois.

## B.  The Parties.

1.     Plaintiff, Anthony Massaro, is currently a resident of Centralia, Illinois.

2.     Plaintiff is an employee of the Illinois Department of Corrections pursuant to Title VII of the Civil Rights Act of 1964, as amended.

3.     Defendant Illinois Department of Corrections (hereinafter "Employer") is a department of the State of Illinois and is an employer subject to the jurisdiction of Title VII of the Civil Rights Act of 1964, as amended.

4.     Plaintiff has been employed by Employer as a correctional officer since on or about September 15, 2003.

5.     At all material times, Plaintiff was employed by Employer at the East Moline Correctional Center in East Moline, Illinois.

6.     Plaintiff was at all material times satisfactorily performing the duties of his position.

7.     Defendants Johnson, McChurch, Papish and Osborne were at all material times supervisory employees of Employer and were acting under color of state law in the course of their employment with Employer.

8.     Johnson, McChurch, Papish, and Osborne were at all material times supervisory employees of Employer who had immediate or successively higher authority over Plaintiff. Furthermore, Papish was at all material times the vice president of the union local representing Plaintiff.

2

**C. Factual Averments.**

1.     Johnson made unwanted sexual advances toward Plaintiff and engaged in other verbal conduct of a sexual nature toward Plaintiff, all despite the fact that Plaintiff repeatedly made it clear to Johnson that those types of comments and conduct were unwanted and unwelcome.

2.     Without limiting the generality of the foregoing, Johnson engaged in the following conduct of this nature beginning in the Summer of 2004 and continuing through August 16, 2005 when Johnson was discharged and Plaintiff was given a hardship transfer to Centralia Correctional Center:

(a)     One of Plaintiff's assigned duties was to guard a dorm of inmates and to obtain Johnson's signature on the logbook on a daily basis. Instead of signing the logbook and then going about his other duties, Johnson would regularly stay in Plaintiff's work area for extended periods of time each day. Johnson frequently and repeatedly went out of his way to be around Plaintiff at work for hours, staring at Plaintiff, flirting with Plaintiff, and attempting to engage Plaintiff in conversations about homosexual sex, even though he had no reason to be or remain in the same area with Plaintiff. This conduct continued despite Plaintiff telling Johnson that he was not gay and that he wanted this to stop.  When Plaintiff would attempt to ignore Johnson's comments, Johnson became verbally abusive to Plaintiff.

(b)     Johnson told Plaintiff that Plaintiff "has a nice butt" and attempted to engage Plaintiff in conversation about the bodies of other male employees, commenting to Plaintiff, for example, that Johnson thought another male officer "had a nice brown butt."

(c)     Johnson asked Plaintiff to tell Johnson about Plaintiff's sexual fantasies and attempted to engage Plaintiff in conversation about watching the inmates in the showers and the size of the inmates' penises.

(d)     Johnson asked Plaintiff questions about whether Plaintiff was homosexual.

(e)     Johnson told Plaintiff that he thought Plaintiff "has sugar in his tank."

(f)     On February 13, 2005, Johnson asked Plaintiff if he was out of breath because he had been lying down in bed with the inmates.

(g)     On February 13, 2005, Johnson asked Plaintiff if he was interested in homosexual

3

sex.

(h)    On February 14, 2005, Johnson asked Plaintiff if Plaintiff was naked and attempted to converse with Plaintiff about homosexual sex.

(i)    On February 21, 2005, Johnson wrote down the URL for an internet website containing male homosexual pornography, gave it to Plaintiff, and suggested Plaintiff take it home and use it to masturbate.

(j)    On February 21, 2005, Johnson told Plaintiff that he did not understand why male to female transsexuals got a sex change operation because "it was like getting a girl."

(k)    On January 30, 2005, Johnson told other employees that Plaintiff had "sugar in his tank."

(l)    On December 4, 2004, Johnson called Plaintiff his "buddy" and rubbed Plaintiff's shoulders and attempted for approximately one hour to engage Plaintiff in a discussion of homosexual sex.

(m)    On December 4, 2004, Johnson told Plaintiff that he imagined him in a hot tub with other men with "sperm floating around" and that is why Plaintiff's hair is "so shiny."

(n)    On December 4, 2004, and on several other occasions, Johnson suggested to Plaintiff that Plaintiff was interested in Johnson sexually.

(o)    On December 4, 2004, Johnson told Plaintiff that he thought Plaintiff was having oral sex with the inmates and that the inmates "are cumming in your mouth."

(p)    On December 4, 2004, Johnson asked Plaintiff if Plaintiff was dancing for the inmates and said "Don't make me come up there and spank you."

(q)    On several occasions, Johnson asked Plaintiff if Plaintiff was dating another male officer and "which one was the girl."

(r)    On several occasions, Johnson told Plaintiff he thought he was "cute" and compared him to a character in the movie Shrek II.

(s)    Johnson asked Plaintiff if he wears "girl's underpants."

(t)    Johnson asked Plaintiff if he was going to the 2004 Christmas party and told Plaintiff to come to the party because Johnson was going to be there, and asked whether Plaintiff had plans to accompany other male officers to the party and asked "which one is going to be the girl?"

4

(u)   On several occasions, Johnson told Plaintiff he believed Plaintiff was interested in him sexually.

(v)   Johnson asked Plaintiff if he was having a "lovers' quarrel" with another male officer when the officer did not show up at work, and Johnson told Plaintiff that they should kiss and make up.

(w)   Johnson attempted to engage Plaintiff in a conversation about gay bars and asked if Plaintiff went to them.

3.   Approximately one month after the harassing behavior began, Plaintiff reported it to McChurch, Papish, and Osborne.  Plaintiff was told by McChurch, Papish and Osborne that Johnson was probably gay and "coming out," and nothing was done about it.

4.   Papish, upon being made aware of Johnson's conduct towards Plaintiff, told Plaintiff: "You can either confront him or suck him off, and you're not the type to confront him."  Papish then said: "Something must have happened to you as a kid, some janitor, school teacher or priest must have touched you or broke it off in you."

5.   Defendants failed to take timely and appropriate corrective action to stop the harassment.

6.   Johnson, McChurch, Papish, and Osborne frequently and repeatedly ridiculed Plaintiff for not (in his appearance and manner) fitting the masculine male stereotype; however, female employees who do not (in appearance and manner) fit the feminine female stereotype were not ridiculed by these supervisors.

7.   Plaintiff opposed these activities and complained to his supervisors, and when nothing was done Plaintiff complained about these activities to Employer's Internal Affairs department in the Spring of 2005.

5

8.    Because Plaintiff opposed and complained of said conduct, Johnson, McChurch, Papish, Osborne and other employees of Employer retaliated against Plaintiff.

9.    Without limiting the generality of the foregoing, Plaintiff was subjected to the following retaliatory behavior and actions by Employer after complaining to Employer about the conduct of Johnson and others:

(a)    Plaintiff was reassigned to a different shift (first shift) which was less favorable.

(b)    Papish insisted that he be the union representative who accompanied Plaintiff to Plaintiff's interviews with the Internal Affairs officers about Plaintiff's complaints, despite the fact that Papish was one of the perpetrators and despite Plaintiff's request for a different union representative.

(c)    In the interviews with Internal Affairs, Papish laughed out loud as Plaintiff gave his account to the investigators.

(d)    Papish repeatedly referred to Plaintiff (to Plaintiff and to others), in person and over the intercom at work, as "Sgt. Dangle" – a reference to a homosexual character in the television series "Reno 911."

(e)    Plaintiff's mail was thrown in the garbage, and Plaintiff's uniforms were taken and hidden, all by other employees.

(f)    Plaintiff's car tires were slashed.

(g)    Plaintiff received numerous telephone calls at his home from Employer's employees telling Plaintiff not to report the behavior.

(h)    Papish asked Plaintiff if he wore "pink hot pants," asked Plaintiff if he danced at and frequented the gay bars, and called Plaintiff gay.

(i)    Papish tried to rub soiled inmate underwear on Plaintiff and told Plaintiff to "file an incident report about that."

(j)    Employer assigned Plaintiff to search the cars of second-shift employees as they came in, and one of the officers directed Plaintiff to stay away from his car "with all of this going on."

(k)    McChurch attempted to physically intimidate Plaintiff by kicking in the door of the administration office, almost hitting Plaintiff, and then stood in front of Plaintiff with his chest puffed out staring at Plaintiff.

6

(l)     On May 13, 2005, after midnight, Plaintiff received telephone calls at home from men using feminine voices and then hanging up.

(m)     In May 2005, the other officers began treating Plaintiff differently by failing to cooperate with him, refusing to give Plaintiff important information about inmates, yelling at him, stating that Plaintiff was "wired," had a "camera in his nametag" and suggesting that employees should not talk to him.

(n)     Another officer said to Plaintiff in an angry tone of voice:  " It must be fucking nice to pick what shift you're on."

(o)     Plaintiff was repeatedly called names by other officers, including "suck ass" and "Phony Tony."

(p)     On May 22, 2005, the Roll Call Officer intentionally pushed another officer into Plaintiff, spilling coffee all over Plaintiff, and said "it couldn't have happened to a better person."

(q)     On May 20, 2005, employees of Employer took photographs of Plaintiff's backside and said they were going to send them to Johnson to see if he could pick it out of a line-up.

(r)     Repeatedly Plaintiff was telephoned by other employees at work who would taunt him using effeminate voices and hang up.

(s)     After the Internal Affairs investigation began, Papish, McChurch and Osborne demanded that Plaintiff lie to Internal Affairs about their knowledge of the harassment and to leave their names out of it.  Papish demanded that Plaintiff meet with McChurch to "get the story straight."  McChurch called Plaintiff repeatedly to come over to McChurch's house.  When Plaintiff went to McChurch's home, McChurch told Plaintiff to lie about his involvement and threatened Plaintiff by showing Plaintiff pictures of McChurch performing karate, saying: "I'm the best at karate, I'm a weightlifter, you need to listen to me."

(t)     Osborne came to Plaintiff's home and insisted that Plaintiff meet with him and Papish, and at the meeting Papish attempted to convince Plaintiff not to report the conduct and offered to help him get a lawyer and get "a lot of money out of this" if he cooperated.

(u)     Papish came to Plaintiff's home and attempted to intimidate Plaintiff into not reporting the behavior.

10.     As a result of the conduct of Johnson, McChurch, Papish and Osborne, Plaintiff was ostracized by fellow officers and employees and subjected to a barrage of offensive behavior and comments destroying his relationships with co-workers and interfering with his ability to perform his job as a correctional officer in the dangerous environment of a prison.

11.     Plaintiff's response to the unwelcome sexual advances and other verbal conduct of a sexual nature by Johnson was a motivating factor in tangible employment action taken against Plaintiff, including Plaintiff's transfer from one shift to another less favorable shift.  After making a report of the conduct to Employer, Plaintiff was reassigned by Employer to first shift, a less favorable shift for Plaintiff.  The shift change did not resolve Plaintiff's concerns because Plaintiff was still required to interact with Johnson on a regular basis, despite the reassignment.

12.     The conduct of the individual defendants was in callous disregard for Plaintiff's rights.

## COUNT I – TITLE VII (SEXUAL HARASSMENT)

### (Against Illinois Department of Corrections)

1.     Plaintiff restates and realleges the allegations of the Common Count of this Complaint as paragraph 1 of this Count I.

2.     Taken as a whole, the ridicule, unwanted sexual advances, and other conduct of a sexual nature, constituted an ongoing and continuing course of conduct and was severe and pervasive, had the purpose or effect of unreasonably interfering with Plaintiff's work performance and created an intimidating, hostile and offensive work environment for Plaintiff affecting the terms, conditions and privileges of his employment and substantially interfered with Plaintiff's ability to perform his job, all in violation of 42 U.S.C. § 2000e.

8

3.      Plaintiff subjectively perceived the harassment as sufficiently severe and pervasive to alter the conditions of his employment, and Plaintiff's subjective perception was objectively reasonable.

4.      The sexual advances and sexual conduct by Johnson, the ridicule by Johnson, McChurch, Papish and Osborne, and the transfer constituted sexual harassment and were based on Plaintiff's gender, male.

5.      Employer is vicariously liable to Plaintiff for such acts of its supervisors against Plaintiff.

6.      As a proximate result of the aforementioned employment discrimination by Defendant, Plaintiff suffered extreme emotional distress, was embarrassed, humiliated, intimidated and has suffered damages in the form of emotional pain and suffering, mental anguish and other damages.

7.      Furthermore, as a result of the aforementioned employment discrimination by Employer, Plaintiff has employed attorneys to investigate and prosecute this action and has, therefore, become obligated for reasonable legal fees and costs.

8.      On June 29, 2005, Plaintiff filed his charge as to the continuing act of discrimination with the Equal Employment Opportunity Commission, Chicago District Office.

9.      On July 26, 2005, the EEOC determined that it would be unable to complete its process within 180 days of the filing of Plaintiff's charge and issued to Plaintiff a Notice of Right to Sue, a true and correct copy of which is attached hereto as Exhibit A.

10.      Plaintiff received the Notice of Right to Sue on August 2, 2005.

11.      Fewer than ninety days have elapsed since receipt by Plaintiff of said Notice of Right

to Sue.

12.    Plaintiff is entitled to file a civil action in a United States District Court for adjudication of his employment discrimination claims.

WHEREFORE, Plaintiff demands judgment in his favor and against the Illinois Department of Corrections for the following relief:

1.    An award of consequential and compensatory damages in an amount sufficient to make Plaintiff whole;

2.    An award of Plaintiff's reasonable attorneys' fees and court costs;

3.    An order permanently enjoining the Illinois Department of Corrections, its assigns, successors, agents, employees and those acting in concert with them from engaging in sexual harassment or retaliation against Plaintiff; and

4.    Such other and further relief as this Court deems just and reasonable.

## COUNT II – TITLE VII (RETALIATION)

### (Against Illinois Department of Corrections)

1.    Plaintiff restates and realleges the allegations of the Common Count of this Complaint as paragraph 1 of this Count II.

2.    Plaintiff restates and realleges the allegations of paragraphs 2 through 12, inclusive, of Count I of this Complaint as paragraph 2 of this Count II.

3.    The above-referenced conduct of the Illinois Department of Corrections constitutes retaliation against Plaintiff because Plaintiff opposed a discriminatory employment practice or made a charge, assisted or participated in an investigation, proceeding, or hearing into a discriminatory employment practice, in violation of 42 U.S.C. § 2000e-3(a).

WHEREFORE, Plaintiff demands judgment in his favor and against the Illinois Department

of Corrections for the following relief:

1.   An award of consequential and compensatory damages in an amount sufficient to make Plaintiff whole;

2.   An award of Plaintiff's reasonable attorneys' fees and court costs;

3.   An order permanently enjoining the Illinois Department of Corrections, its assigns, successors, agents, employees and those acting in concert with them from engaging in sexual harassment or retaliation against Plaintiff; and

4.   Such other and further relief as this Court deems just and reasonable.

## COUNT III – 42 U.S.C. § 1983

### (Against Johnson, McChurch, Papish and Osborne)

1.   Plaintiff restates and realleges the allegations of the Common Count of this Complaint as paragraph 1 of this Count III.

2.   The sexual advances by Johnson, the ridicule by Johnson, McChurch, Papish and Osborne, and the transfer constituted sexual harassment and disparate treatment, were intentional, and were based on Plaintiff's gender, male.

3.   The conduct of the individual defendants subjected Plaintiff to a deprivation of his rights, privileges and immunities secured by the Constitution and laws of the United States, including but not limited to the following:  Plaintiff's Fourteenth Amendment right to equal protection, to be free from invidious discrimination based upon gender, and liberty right to be free from generalized government harassment.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants Johnson, McChurch, Papish and Osborne for the following relief:

1.   An award of consequential and compensatory damages in an amount sufficient to make Plaintiff whole;

11

2.  An award of punitive or exemplary damages in the amount of the maximum allowed by law in order to deter such conduct in the future;

3.  An award of Plaintiff's reasonable attorneys' fees and court costs; and

4.  Such other and further relief as this Court deems just and reasonable.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against Johnson, McChurch, Papish and Osborne)

1.  Plaintiff restates and realleges the allegations of the Common Count of this Complaint as paragraph 1 of this Count IV.

2.  Defendants' conduct was extreme and outrageous, beyond all bounds of decency usually tolerated by a civilized society; Defendants either intended that this conduct should inflict severe emotional distress, or knew that there was a high probability that this conduct would cause severe emotional distress; and Defendants' conduct did in fact cause Plaintiff to suffer severe emotional distress.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants Johnson, McChurch, Papish and Osborne for the following relief:

1.  An award of consequential and compensatory damages in an amount sufficient to make Plaintiff whole;

2.  An award of punitive or exemplary damages in an amount sufficient to deter such conduct in the future; and

3.  Such other and further relief as this Court deems just and reasonable.

ANTHONY MASSARO
Plaintiff

s/ DANIEL S. ALCORN
#06209425

12

Attorney for Plaintiff
STOERZBACH MORRISON, P.C.
139 South Cherry Street
P. O. Box 1328
Galesburg, IL  61402-1328
Telephone:  309/341-6000
Telefax:       309/343-7500
alcornd@galesburglaw.com

## **<u>JURY DEMAND</u>**

Plaintiff demands trial by jury of all issues properly triable thereto.

**E-FILED**
Friday, 13 January, 2006 10:31:40 AM
Clerk, U.S. District Court, ILCD

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE
(Issued on request)

| To: | Anthony Massaro | From: | By |
|---|---|---|---|
| | 810a 2nd St. | | **Equal Employment Opportunity Commission** |
| | Colona, Illinois 61241 | | **Chicago District Office** |
| | | | **500 West Madison, Suite 2800** |
| | Certified: 7001 1940 0003 8829 2961 | | **Chicago, Illinois 60661** |
| ☐ | On behalf of a person aggrieved whose identity is CONFIDENTIAL (29 C.F.R. 1601.7(a)) | | |

| Charge Number | EEOC Representative | Telephone Number |
|---|---|---|
| **210-2005-06545** | **Eileen Sotak, Enforcement Supervisor** | **(312) 353-1316** |

( See the additional information attached to this form )

**TO THE PERSON AGGRIEVED:** This is your NOTICE OF RIGHT TO SUE. It is issued at your request. If you intend to sue the respondent(s) named in your charge, YOU MUST DO SO WITHIN NINETY (90) DAYS OF YOUR RECEIPT OF THIS NOTICE. OTHERWISE YOUR RIGHT TO SUE IS LOST.

☐ More than 180 days have expired since the filing of this charge.

[X] Less than 180 days have expired since the filing of this charge, but I have determined that the Commission will be unable to complete its process within 180 days from the filing of the charge.

[X] With the issuance of this NOTICE OF RIGHT TO SUE, the Commission is terminating its process with respect to this charge.

☐ It has been determined that the Commission will continue to investigate your charge.

☐ **ADEA:** While Title VII and the ADA require EEOC to issue this notice of right to sue before you can bring a lawsuit, you may sue under the Age Discrimination in Employment Act (ADEA) any time 60 days after your charge was filed until **90 days after you received notice that EEOC has completed action on your charge.**

☐ **Because EEOC is closing your case,** your lawsuit under the ADEA must be brought within 90 days of your receipt of this notice. Otherwise, your right to sue is lost.

☐ **EEOC is continuing its investigation.** You will be notified when we have completed action and, if appropriate, our notice will include notice of right to sue under the ADEA.

☐ **EPA:** While Title VII and the ADA require EEOC to issue this Notice of Right to Sue before you can bring a lawsuit, you already have the right to sue under the Equal Pay Act (EPA) (You are not required to complain to any enforcement agency before bringing an EPA suit in court). EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

On Behalf of the Commission

7/26/05
(Date)

John P. Rowe, District Director

**EXHIBIT**
A

Enclosures
   Information Sheet
   Copy of Charge

cc  Respondent(s)          **Illinois Corrections Department**

EEOC Form 161-D (Test 10/96)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974; See Privacy<br>Act Statement before completing this form. | AGENCY<br>[  ] FEPA<br>[xx] EEOC | CHARGE NUMBER<br>210-2005-06545 |
| --- | --- | --- |

EEOC

JUN 29 2005

CHICAGO DISTRICT OFFICE

| Mr. Anthony Massaro | (309) 796-0963 | |
| --- | --- | --- |
| NAME: *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* | |
| 810A – 2nd Street | Colona, IL 61241 | December 5, 1972 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |

## NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME: | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
| --- | --- | --- |
| **Illinois Department of Corrections** | Unknown, but<br>in excess of<br>statutory requirements | **217-522-2666** |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
| --- | --- | --- |
| **1301 Concordia Court<br>P. O. Box 19277** | **Springfield, IL 62794-9277** | **Sangamon** |

| NAME: | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
| --- | --- | --- |
| **AFSCME Council 31** | Unknown, but<br>in excess of<br>statutory requirements | **217-788-2800** |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
| --- | --- | --- |
| **615 South Second Street** | **Springfield, IL 62701** | **Sangamon** |

CAUSE OF DISCRIMINATION BASED ON *(Check Appropriate Box(es))*

[ ] Race  [ ] Color  [x] Sex  [ ] Religion  [ ] National Origin
[x] Retaliation  [ ] Age  [ ] Disability  [ ] Other (Specify)

DATE DISCRIMINATION TOOK PLACE
Earliest        Latest
7/2004
[x] Continuing Action

THE PARTICULARS ARE:

**See attached sheet.**

**I WANT THIS CHARGE FILED WITH THE EEOC.** I will advise the EEOC if I change my
address or telephone number and cooperate fully with it in the processing of my charge in
accordance with their procedures.

     I swear and affirm that I have read the above charge and that it is true to the best of my
knowledge, information and belief.

*Anthony Massaro*
Charging Party

STATE OF ILLINOIS     )
                     ) SS
COUNTY OF KNOX    )

     I, the undersigned, a Notary Public in and for Knox County, Illinois, DO HEREBY
CERTIFY that ANTHONY MASSARO is personally known to me to be the same person whose
name is subscribed to the foregoing document and that he appeared before me this day in person and
acknowledged that he signed the same as his free and voluntary act and deed.

     Subscribed and sworn to before me this 23rd day of June, 2005.

NOTARY PUBLIC

Daniel S. Alcorn
STOERZBACH MORRISON, P.C.
Attorney for Charging Party
P. O. Box 1328
139 S. Cherry Street
Galesburg, IL 61402-1328
Telephone: 309-341-6000
Telefax: 309-343-7500

OFFICIAL SEAL
CAROLYN A. HANSON
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 1-11-2007

I have worked for the Illinois Department of Corrections as a correctional officer at the East Moline Correctional Center in East Moline, Illinois since September 15, 2003.

In the summer of 2004 (to the best of my recollection, July 2004) one of my superiors, Lt. Guy Johnson, began subjecting me to repeated unwanted sexual harassment. One of my assigned duties was to guard a dorm of prisoners and to obtain Lt. Johnson's signature on the logbook on a daily basis. Instead of signing the logbook and then going about his other duties, Lt. Johnson would stay in my work area for extended periods of time each day. On a daily basis, he would make numerous derogatory comments to me about homosexuals and would then question my sexual orientation. Lt. Johnson also repeatedly made degrading, sexually-oriented comments about me to other correctional officers. I initially attempted to ignore Lt. Johnson's harassment. After this behavior continued for more than a couple of days, I told Lt. Johnson that his remarks were unwelcome, offensive, and that I wanted the behavior to stop. Lt. Johnson ignored my repeated requests that the behavior stop, and he continued to subject me to daily sexual harassment and to make offensive comments about me to other officers. Lt. Johnson also became verbally abusive to me when I tried to ignore his comments. This behavior created a hostile working environment and has caused me extreme emotional distress.

About a month after the harassment began, I reported it to three other superior officers: Lt. Jeff McChurch, Sgt. Papish, and Sgt. Osborne. None of these three officers took my complaint to the proper authorities or addressed my concerns in any positive way. Not only did none of those three officers take any action to stop the abuse, they also began to make offensive sexual comments directly to me and about me to other correctional officers. Papish is the Vice-President of my union, AFSCME Council 31, and he has been the most vocal, offensive, and persistent of the three in his comments to me and about me.

Although none of the three correctional officers to whom I voiced my complaints notified the proper authorities, Internal Affairs became aware of the situation and conducted an investigation in the Spring of 2005. When it became know that Internal Affairs would be investigating, I was subjected to extreme and repeated intimidation from Lt. McChurch, Sgt. Papish, and Sgt. Osborne – each insisting that I lie to Internal Affairs about the fact that I had reported the harassment to them so that their employment would not be jeopardized and making it clear to me that I would suffer retaliation if I told Internal Affairs that the three of them were aware of the situation but took no corrective action. Sgt. Papish insisted on accompanying me as my union representative at my initial

interview with Internal Affairs, and because of the intimidation I was being subjected to and out of fear for my personal safety, I told Internal Affairs at that initial interview that I had not reported the abuse.  Shortly thereafter, despite my fears, I again went to Internal Affairs and gave them the correct account of my attempts to stop the harassment through the proper chain of command.

The only action taken by the Department of Corrections as a result of the investigation was to change my work shift to a less favorable shift.

Despite my attempts to stop the harassment, it continues at this time. Lt. McChurch's work shift has also been changed so that I now must again work with him.  I continue to be subjected to daily harassment and retaliation from other correctional officers, both superiors and my peers. My uniforms have been missing; my mail has been thrown in the trash; I receive almost daily prank telephone calls from other officers pretending to be gay (using effeminate voices, etc.); and when I ask other correctional officers for assistance, they refuse to help me.  While some officers ignore me, some repeatedly tell sexually offensive jokes about me.

None of my attempts to stop the sexual harassment have been successful, and my union has failed in their duty to correct the situation. The sexual harassment and the retaliation against me for giving Internal Affairs information on the harassment continues on a daily basis.

2

# FILING SUIT IN COURT OF COMPETENT JURISDICTION

## PRIVATE SUIT RIGHTS:

This issuance of this Notice of Right to Sue ends EEOC's process with respect to your charge. You may file a lawsuit against the respondent named in your charge within 90 days from the date you receive this Notice. Therefore you should **keep a record of this date**. Once this 90-day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf, your suit should be filed **well in advance of the expiration of the 90-day period**.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the state where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.

You may contact EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

A lawsuit against a **private** employer is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a **State agency or a political subdivision of the State** is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment Act or the Americans with Disabilities Act or, probably, the Equal Pay Act against a **State instrumentality** (an agency directly funded and controlled by the State) **can only be filed in a State court**.

A lawsuit under the Age Discrimination in Employment Act or the Americans with Disabilities Act or the Equal Pay Act against a **political subdivision of the State**, such as municipalities and counties, may be filed in the U.S. District Court.

For a list of U.S. District Courts, please see reverse side.

**IF THE FIRST THREE CHARACTERS OF YOUR <u>EEOC CHARGE NUMBER</u> ARE "21B" <u>AND</u> YOUR CHARGE WAS INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUESTS FOR REVIEWING AND COPYING DOCUMENTS FROM YOUR FILE <u>MUST</u> BE DIRECTED TO IDHR.**

## ATTORNEY REPRESENTATION:

If you cannot afford or have been unable to obtain a lawyer to represent you, the court having jurisdiction in your case may, at its discretion, assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your request to the court should be made well before the end of the 90-day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within this 90-day period.

## DESTRUCTION OF FILE:

If you file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your charge file could be destroyed as early as six months after the date of the Notice of Right to Sue.

**IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE IN WRITING WHEN THE LAWSUIT IS RESOLVED.**

**Information on Where to File Suit**

You have been notified of your right to file suit in Federal District Court. Suit is ordinarily filed in the District Court having jurisdiction of the county in which the employer, against whom you filed a charge of employment discrimination, is located. The telephone number listed for each District is that of the Clerk of the Court.

**U.S. District Court**
**Northern District of Illinois**
**Eastern Division at Chicago**
**219 South Dearborn Street**
**Chicago, Illinois  60604**
**312/435-5670**

Counties

| | |
|---|---|
| Cook | Kendall |
| DuPage | Lake |
| Grundy | LaSalle |
| Kane | Will |

**U.S. District Court**
**Northern District of Illinois**
**Western Division at Rockford**
**211 South Court Street**
**Federal Building**
**Rockford, Illinois  61101**
**815/987-4355**

Counties

| | |
|---|---|
| Boone | McHenry |
| Carroll | Ogle |
| DeKalb | Stephenson |
| JoDaviess | Whiteside |
| Lee | Winnebago |

**U.S. District Court**
**Southern District of Illinois**
**750 Missouri Avenue**
**East St. Louis, Illinois  62201**
**618/482-9370**

and

**301 West Main Street**
**Benton, Illinois  62812**
**618/438-0671**

Counties

| | |
|---|---|
| Alexander | Johnson |
| Bond | Lawrence |
| Calhoun | Madison |
| Clark | Marion |
| Clay | Massac |
| Clinton | Monroe |
| Crawford | Perry |
| Cumberland | Pope |
| Edwards | Pulaski |
| Effingham | Randolph |
| Fayette | Richland |
| Franklin | St. Clair |
| Gallatin | Saline |
| Hamilton | Union |
| Hardin | Wabash |
| Jackson | Washington |
| Jasper | Wayne |
| Jefferson | White |
| Jersey | Williamson |

**U.S. District Court**
**Central District of Illinois**
**Urbana Division**
**201 South Vine**
**218 U.S. Courthouse**
**Urbana, Illinois 61801**
**217/373-5830**

Counties

| | |
|---|---|
| Champaign | Kankakee |
| Coles | Macon |
| Douglas | Moultrie |
| Edgar | Piatt |
| Ford | Vermilion |
| Iroquois | |

**Peoria Division**

**100 N.E. Monroe Street**
**135 Federal Building**
**Peoria, Illinois  61602**
**309/671-7117**

Counties

| | |
|---|---|
| Bureau | McLean |
| Fulton | Peoria |
| Hancock | Putnam |
| Knox | Stark |
| Livingston | Tazewell |
| Marshall | Woodford |
| McDonough | |

**Rock Island Division**
**211 - 19th Street**
**Rock Island, Illinois  61201**
**309/793-5778**

Counties

| | |
|---|---|
| Henderson | Rock Island |
| Henry | Warren |
| Mercer | |

**Springfield Division**
**600 East Monroe Street**
**Springfield, Illinois  62701**
**217/492-4020**

Counties

| | | |
|---|---|---|
| Adams | Logan | Pike |
| Brown | Macoupin | Sangamon |
| Cass | Mason | Schuyler |
| Christian | Menard | Scott |
| DeWitt | Montgomery | Shelby |
| Greene | Morgan | |



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Chicago District Office**

500 West Madison St., Suite 2800
Chicago, IL 60661
PH: (312) 353-2713
TDD: (312) 353-2421
ENFORCEMENT FAX: (312) 886-1168
LEGAL FAX: (312) 353-8555

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests should be made in writing to **Sarita Gaddis** and mailed to the address above or faxed to **(312) 353-7623**.

If you are the Charging Party and a RIGHT TO SUE has been issued, you may be granted access to your file:

\*   Before filing a lawsuit, **but within 90 days of your receipt of the Right to Sue, or**

\*   After your lawsuit has been filed. **If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the first page of your court complaint showing the docket number.**

If you are the Respondent you may be granted access to the file only after **a lawsuit has been filed. Include with your request a copy of the first page of the court complaint reflecting the docket number.**

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, will not be disclosed to either party.

Before you can have access to the file you must sign an Agreement of Nondisclosure. (Statutes enforced by the EEOC prohibit the agency from making investigative information public.)

Your request for access to your file will generally be acted upon no later than ten (10) days from receipt of your request.

You can review the file in our offices and/or request that a copy of the file be sent to you. Files cannot be removed from the office. **If you want to review the file, you must make an appointment to do so.** You will be contacted to schedule an appointment.

Your file will be copied by Uniscribe, 300 West Adams Street, Suite 900, Chicago, Illinois, 60606. You are responsible for the copying costs and must sign an agreement to pay these costs before the file will be sent to Uniscribe. Therefore, it is recommended that you first review your file to determine whether you want all, or only some, of the documents copied. EEOC cannot provide a count of the pages contained in it. If you choose not to review your file, it will be sent in its entirety to the copy service and you will be responsible for the cost. Payment must be made directly to the Uniscribe.