UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| ANTHONY MASSARO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 05-4087 |
| | ) |
| ILLINOIS DEPARTMENT OF | ) |
| CORRECTIONS; GUY JOHNSON; | ) |
| JEFF McCHURCH; JEFF PAPISH; | ) |
| and ALBERT OSBORNE, | ) |
| | ) |
| Defendants. | ) |

## MOTION TO DISMISS AMENDED COMPLAINT

Defendants Jeff McChurch and Jeff Papish, by their attorneys, Katz, Huntoon & Fieweger, P.C., pursuant to Federal Rule of Civil Procedure 12(b)(6) states as follows for his Motion to Dismiss Counts III and IV of plaintiff's Amended Complaint:

1. As supported in the accompanying Memorandum of Law, defendants McChurch and Papish move to dismiss Counts III and IV for failure to state a claim upon which relief may be granted pursuant to FRCP 12(b)(6).

2. There are several bases for dismissing Count III, the § 1983 action, any one of which is independently sufficient for dismissal as to these two defendants.

3. First, fatal to plaintiff's claim is the absence of an adverse employment action.

4. A necessary element of plaintiff's *prima facie* case "under the equal protection clause of the Fourteenth Amendment" for purposes of § 1983 is that plaintiff suffered an adverse

2

employment action." McPhaul v. Board of Commissioners in Madison County, 226 F.3d 558, 564 (7th Cir. 2000).

5. The only allegation of an adverse employment action in plaintiff's Amended Complaint is "plaintiff's transfer from one shift to another less favorable shift." (See "factual averments, ¶ 11, Amended Complaint, p. 8.)

6. However, as a matter of law, a shift change simply does not constitute an adverse employment action. See, for example, Thomas v. Potter, 145 Fed. Appx. 182, 184 (7th Cir. 2005), affirming the district court's finding that "a decision to change an employee's work shift, without a change in the employee's title, pay or responsibilities does not rise to the level of an adverse employment action."

> "For the purposes of Title VII, however, an adverse employment action must be 'materially adverse,' in that it 'significantly alters the terms and conditions of the employee's job.' See *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (holding that a postal employee did not suffer an adverse employment action when the Postal Service, among other actions, changed her shift)."

(See additional cases collected in defendants' Memorandum of Law.)

7. Failure to allege any legally cognizable adverse employment action is grounds for dismissal of plaintiff's § 1983 action. (See this district's decision Frazier v. Harris, 266 F.Supp.2d 853 (C.D. Ill. 2003).[1])

---

[1] These defendants would also note parenthetically that the very act plaintiff claims to be an adverse employment action, the change to first shift, appears, based on plaintiff's language in paragraph 11 of the factual averments, to be a reassignment to remove him from contact on the shift that the alleged sexual harasser worked. (This is the only fair implication from plaintiff's language "the shift change did not resolve plaintiff's concerns because plaintiff was still required to interact with Johnson. …") So not only is a shift change, as a matter of law, not an adverse employment action, in this case was done in direct response to plaintiff's alleged allegations of harassment, which was a reasonable response by defendant IDOC.

3

8. As a second and separate basis for dismissal, even accepting all plaintiff's allegations as true, he cannot meet the high threshold for showing <u>direct</u> personal involvement by these two defendants in any alleged deprivation of a constitutional right afforded to plaintiff.

9. Again as further supported in the Memorandum of Law, "personal knowledge and involvement of the superior are essential for establishing individual liability under § 1983 … . Knowledge alone is not enough. The superior's conduct must rise to the level of criminal recklessness." <u>Cassara</u> v. <u>State of Illinois</u>, 843 F.Supp. 411, 413 (N.D. Ill. 1994). Importantly, defendants McChurch and Papish certainly were in no way directly involved in the allegations of Johnson's sexual harassment of plaintiff, and just as importantly, were not the decision makers as a result of the Illinois Department of Corrections' Internal Affairs investigation which plaintiff refers to in his Complaint. Neither Jeff McChurch nor Jeff Papish are alleged to have participated in the decision to place Massaro on a different shift.

10. At best, plaintiff alleges these defendants (in particular Jeff Papish) made certain remarks which this court might construe as boorish and belittling, and perhaps questioning plaintiff's sexual orientation, but those remarks cannot rise to a level of a constitutional violation. (See <u>Lewis</u> v. <u>Chicago Housing Authority</u>, 1998 U.S. Dist. LEXIS 17533, rejecting individual liability under § 1983 on the part of a chief of police where he referred to plaintiff as "little girl sergeant," finding "while this remark may have been inappropriate and demeaning, standing alone, it does not rise to the level of a constitutional violation. Nor does this remark suggest or establish that (the chief) was personally involved in the decision to place Lewis on administrative leave without pay."

4

11. Count III must be dismissed as to these two defendants because plaintiff's allegations do not, as a matter of law, rise to the level of criminal recklessness and do not establish that either of these defendants participated in an action which led to a constitutional deprivation of Massaro.

12. As a third and additional ground for dismissal, these defendants are qualifiedly immune, a finding this court must make prior to trial.

13. Plaintiff cannot show, even assuming all of his allegations are true, that the conduct of these two defendants' violated a clearly established "statutory or constitutional right of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

14. Importantly, this court must note the distinction between the allegations of the conduct on the part of the individual harasser, Johnson, and the allegations made against these two defendants. At best, plaintiff alleges these two defendants made certain remarks regarding his sexual orientation and failed to report Johnson's alleged sexual harassment. Nothing these two did had anything whatsoever to do with male on male sexual harassment, which arguably may have been a clearly established constitutional right. Instead, all of his allegations (for example, referring to plaintiff as "sergeant Dangle - a reference to a homosexual character in the television series Reno 911;" (factual allegation 9(d)); asking plaintiff "if you wore 'pink hot pants,'" asking plaintiff if he "frequented the gay bars," and calling plaintiff "gay" (Id., ¶ 9(h)) do not implicate a constitutional right which a reasonable person would have known to have existed between the summer of 2004 and August 2005.

5

15. Indeed, "harassment based solely upon a person's sexual preference or orientation (and not on one's sex) is not an unlawful employment practice under Title VII." Hamner v. St. Vincent Hospital, 224 F.3rd 701, 704 (7th Cir. 2000).

16. Plaintiff's § 1983 action must be dismissed on the basis of qualified immunity because it cannot be said that a reasonable person would have known that harassment based on a perception of this plaintiff's sexual orientation or preference was a constitutional violation when it is not even clear in the Seventh Circuit, and most certainly not to Judge Posner as evidenced by his concurrence in Hamm v. Weyauwega Milk Products, Inc., 332 F.3d 1058 (7th Cir. 2003). As stated in the main opinion in that case:

> "Even drawing all reasonable inferences in Hamm's favor, his litany of complaints about the actions of his co-workers inescapably relate to either Hamm's co-workers' disapproval of his work performance or their perception of Hamm's sexual orientation. … With respect to the other incidents that Hamm submits as evidence of harassment, all the evidence points to the conclusion that they relate to speculation by his co-workers about his sexual orientation." (332 F.3d at 1062-63.)

17. In his concurrence in Hamm, Judge Posner expresses his "conviction that the case law has gone off the tracks" (332 F.3d at 1066) in making distinctions between "hostility to effeminate men and to homosexual men," (Id. at 1067, concluding "to suppose courts capable of disentangling the motives for disliking the non-stereotypical man or woman is a fantasy." (Id.)

18. The point is, if the judges of the Seventh Circuit cannot agree, this court cannot, as a matter of law, state that Jeff McChurch and Jeff Papish should have known that making certain alleged insensitive comments regarding plaintiff's sexuality (whether he is actually homosexual or not) was a constitutional violation. As such, these defendants are entitled to qualified immunity and Count III must be dismissed as to them accordingly.

6

19. As to Count IV, the claim for intentional infliction of emotional distress, that state common law pendant claims must be dismissed if the court dismisses the federal claim in Count III against these two defendants. 28 U.S.C. § 1367(c)(3). See Phelan v. Cook County, 2004 LEXIS 21345 (N.D. Ill. 2004), where, with dismissal of the § 1983 claims "there is no longer a federal claim pending before this court." Accordingly, the court concluded:

> "Thus, this court, in its discretion, declines to accept supplemental jurisdiction over Phelan's state law claims of … intentional infliction of emotional distress; see Vukadinovich v. Board of School Trustees, 978 F.2d 403, 415 (7th Cir. 1992) ('it is well established that if federal claims are dismissed before trial, the federal district court should generally dismiss the state law claims as well')."

20. Finally, if this court does not dismiss these § 1983 claims, as separate grounds for dismissing Count IV, plaintiff again has not stated a cause for which leave can be granted under Illinois law.

21. As summarized in Honaker v. Smith, 256 F.3d 477, 490 (7th Cir. 2001) "in Illinois, the tort of intentional infliction of emotional distress applies only to conduct which must be truly extreme and outrageous," citing the Illinois Supreme Court decision McGrath v. Fahey, 126 Ill.2d 78, 533 N.E.2d 806, 809, 127 Ill.Dec. 724 (1988). Accordingly, the Honaker court summarized:

> "It is clear, however, that 'the tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' McGrath, 533 N.E.2d 809. … Instead, the conduct must go beyond all bounds of decency and be considered intolerable in a civilized community. … Thus, to serve as a basis for recovery, the defendant's conduct must be such that the 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim: outrageous!' Doe v. Calumet City, 161 Ill.2d 374, 641 N.E.2d 498, 507, 204 Ill.Dec. 274 (Ill. 1994)." (Id. at 490.)

22. As further supported in the Memorandum of Law, accepting every allegation of plaintiff as true, plaintiff still cannot meet this extremely demanding standard; indeed, he has

7

alleged nothing more than "mere insults, indignities, threats, etc." The conduct of defendant Johnson cannot be bootstrapped upon these two defendants to then raise the pleading to a level of outrageousness that then creates a cause of action against Papish and McChurch for their, at best boorish and immature behavior.

23.   Simply put, while the average member of the community might not appreciate these two defendants calling plaintiff certain names such as asking plaintiff if he wore "pink hot pants," these defendants will ask this court to determine, as a matter of law on this motion to dismiss, that the response would not be "outrageous!" Count IV should be dismissed as to defendants Jeff McChurch and Jeff Papish.

WHEREFORE, defendants Jeff McChurch and Jeff Papish respectfully ask this court to dismiss Counts III and IV as to them, with prejudice.

JEFF McCHURCH and JEFF PAPISH,
Defendants


By: /s/Stephen T. Fieweger

For:
KATZ, HUNTOON & FIEWEGER, P.C.
Attorneys for Defendants McChurch and Papish
1000 - 36th Avenue
P.O. Box 950
Moline, IL 61266-0950
Telephone:  309-797-3000
Fax:  309-797-3330

8

## CERTIFICATE OF SERVICE

I hereby certify on February 23, 2006, I electronically filed defendants Motion to Dismiss Amended Complaint with the Clerk of the Court using the CM/ECF System which will send notification of this filing to the following:

Daniel S. Alcorn
Attorney for Anthony Massaro
Stoerzbach Morrison, P.C.
139 South Cherry Street
Galesburg, IL  61402-1328
alcornd@galesburglaw.com

Mark D. Churchill
Attorney for Albert Osborne
Churchill & Churchill
1610 5th Avenue
Moline, IL  61265
cclaw@churchillfirm.com

Jonathan C. Goldman
Attorney for Guy Johnson
Goldman & Ehrlich
19 S. LaSalle St., Suite 1500
Chicago, IL  60603
jon@goldmanehrlich.com

Sarah R. Kerley
Attorney for IDOC
Illinois Attorney General
500 S. Second Street
Springfield, IL  62706
skerley@atg.state.il.us

I hereby certify that on February 23, 2006, I mailed by United States Postal Service, documents to the following non-registered participants:

None.

By: /s/Stephen T. Fieweger

s:\wp\worddoc\12743001.01M