E-FILED
Thursday, 23 February, 2006  03:21:19 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| ANTHONY MASSARO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 05-4087 |
| | ) |
| ILLINOIS DEPARTMENT OF | ) |
| CORRECTIONS; GUY JOHNSON; | ) |
| JEFF McCHURCH; JEFF PAPISH; | ) |
| and ALBERT OSBORNE, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendants Jeff McChurch and Jeff Papish, by their attorneys, Katz, Huntoon &

Fieweger, P.C., respectfully submit the following Memorandum of Law in Support of their

Motion to Dismiss plaintiff's Amended Complaint:

**I.**

**INTRODUCTION**

In this case, defendants Jeff McChurch and Jeff Papish recognize that on a Motion to

Dismiss, this court must "accept as true all well-pleaded factual allegations contained in the

complaint and draw all inferences in the light most favorable to the plaintiffs." Frazier v. Harris,

266 F.Supp.2d 853, 857 (C.D. Ill. 2003), citing Hager v. City of West Peoria, 84 F.3d 865, 868-

69 (7th Cir. 1996), but even accepting everything Anthony Massaro has pled as true, there are

three separate bases for dismissing Count III, the § 1983 action, as to these two defendants.

2

First, in his § 1983 action, plaintiff attempts to invoke the "Fourteenth Amendment right to equal protection" (Count III, ¶ 3), but to do so requires that he must allege an adverse employment action. And as a matter of law, Massaro's only allegation of an adverse employment action, a shift change, does not constitute an adverse employment action, and the entire claim must be dismissed accordingly.

Second, to find individual liability under § 1983 as to these two defendants, plaintiff was required to plead facts establishing personal and direct involvement on the part of these two superiors of the deprivation of his equal protection right. And again, this he has failed to do. At best, he has alleged defendants McChurch and Papish knew of Johnson's alleged sexual harassment and did nothing in response except make demeaning comments regarding plaintiff. But plaintiff has alleged no direct involvement by these two defendants in the actual sexual harassment committed by defendant Guy Johnson, and while this court is required to take all inferences in plaintiff's favor, he has specifically pled that Johnson's misconduct was ultimately reported and investigated and these two defendants were not even decision makers regarding plaintiff and his sexual harassment complaints. As a matter of law on this Motion to Dismiss, plaintiff has not alleged anything more than knowledge and ancillary comments and behavior based on plaintiff's perceived sexual orientation. That is simply not enough to establish this high threshold of showing personal involvement by these two defendants.

Third, and finally, this court will be required prior to trial to determine whether these two defendants are qualifiedly immune from suit, and defendants respectfully assert this court can make the determination at this time and dismiss Count III. It is still not firmly established in the Seventh Circuit that making comments regarding one's perceived sexual orientation is a

3

protected constitutional right such that plaintiff can meet the requirement that he has alleged

these defendants violated a "constitutional right of which a reasonable person would have

known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

And if this court dismisses Count III, it should also dismiss Count IV, plaintiff's alleged

state law claim for intentional infliction of emotional distress; see Vukadinovich v. Board of

School Trustees, 978 F.2d 403, 415 (7th Cir. 1992).

> "It is well established that if federal claims are dismissed before trial, the federal
> district court should generally dismiss the state law claims as well." 28 U.S.C.
> § 1367(c)(3).

Finally, as separate grounds for dismissing Count IV, plaintiff does not approach the

extremely high standard in Illinois for asserting a cause for intentional infliction of emotional

distress. Such an action requires "conduct which must be truly extreme and outrageous," and

even accepting all his allegations as true, Massaro has alleged conduct which this court may well

construe as demeaning, boorish, petty, and even childish, but as established herein, it does not

begin to rise to the "shocking" level that would cause this court to exclaim "outrageous!"

Because of this, Count IV must be dismissed.

## II.

## ADVERSE EMPLOYMENT ACTION.

The first basis for dismissal of plaintiff's § 1983 action is his failure to allege an adverse

employment action. A necessary element of a 42 U.S.C. § 1983 action "under the equal

protection clause of the Fourteenth Amendment" is that a plaintiff must have "suffered an

adverse employment action." McPhaul v. Board of Commissioners of Madison County, Indiana,

4

226 F.3d 558, 564 (7th Cir. 2000). See also, <u>Patterson</u> v. <u>The County of Cook</u>, 2204 U.S. Dist.

LEXIS 12178 (N.D. Ill. 2003 at *35-36):

> "Section 1983 claims perceived under a similar, but not identical framework. In order to state a *prima facie* case under the equal protection clause of the Fourteenth Amendment, a public employee must demonstrate that she: (1) is a member of a protected class; (2) is otherwise similarly situated to members of the unprotected class; (3) suffered an adverse employment action; (4) was treated differently from members of the unprotected class; and (5) the defendant acted with discriminatory intent."

Leaving for a later day, if necessary, the other elements, this court has recognized that if a

plaintiff has not alleged an adequate adverse employment action, the case is appropriate for

dismissal on a Motion to Dismiss. See <u>Frazier</u>, <u>supra</u>, 266 F.Supp.2d at 866:

> "… Each plaintiff must allege that the defendants intentionally discriminated against him or her because of that plaintiff's race, and each suffered an adverse employment action as a result. <u>Bennett</u> v. <u>Schmidt</u>, 153 F.3d 516, 518 (7th Cir. 1998). An adverse employment action is an action that imposes a materially adverse change in the conditions of employment such as termination, demotion, denial of promotion, decrease in compensation, material loss of benefits, or significantly diminished responsibilities. <u>Smart</u> v. <u>Ball State University</u>, 89 F.3d 437, 441 (7th Cir. 1996).
>
> …
>
> Williams, Stelivan, and Holman do not allege that they suffered any adverse employment actions. Stelivan and Holman suffered various indignities, but the alleged wrongdoing does not meet the definition of adverse employment actions. Williams alleges no actions taken against him. He does not state a claim." (<u>Id</u>. at 65, 867.)

Anthony Massaro likewise alleges various wrongdoings, but the only allegation of any

adverse employment action, a change in shift, is not, as a matter of law, an adverse employment

action. First, generally, as stated in <u>Buttron</u> v. <u>Sheehan</u>, 2003 U.S. LEXIS 13496 (N.D. Ill.

2003):

> "Federal employment discrimination statutes are 'not intended to reach every bigoted act or gesture that a worker might encounter in the workplace.' <u>Hunt</u> v. <u>City of Markham, IL</u>, 219 F.3d 649, 653 (7th Cir. 2000). Title VII only forbids an employer's act of discrimination related to the employee's 'compensation, terms, conditions, or privilege

5

of employment.' 42 U.S.C. § 2000e-2(a)(1). The Supreme Court requires the discrimination to result in 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.' Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)." (Id. at *42-43.)

And specifically, the Seventh Circuit (indeed every circuit) has held that a mere change in shift is not an adverse employment action as a matter of law. See Thomas v. Potter, 145 F.Appx. 182 (7th Cir. 2005), affirming the district court's determination that "a decision to change an employee's work shift, without a change in the employee's title, pay or responsibilities, does not rise to the level of an adverse employment action." (Id. at 183.) As the Seventh Circuit noted, the district court:

> "… determined that Thomas had not presented a *prima facie* case of discrimination or retaliation, citing Grube v. Lau Industries, Inc., 257 F.3d 723, 728-29 (7th Cir. 2000), in which we held that an employer's decision to change a female employee's working hours was not an adverse employment action because her pay and job title remain the same and she suffered no significantly diminished job responsibilities. Id." (Id. at *183.)

In fact, in Grube v. Lau Industries, Inc., 257 F.3d 723, 728 (7th Cir. 2001), the court specifically noted that plaintiff "fails to offer a single citation to a case from any circuit, including ours, for the proposition that a mere transfer from a first to a second shift, unaccompanied by a reduction in pay or significantly diminished job responsibilities, can support a constructive discharge claim."

In fact, Grube makes a point which would apply equally in this case -- plaintiff's argument "is actually antithetical" to Title VII's intended purposes. As the court stated in Grube:

> "Indeed, were we to accept Grube's position, any transfer of a married female employee to a less desirable work assignment could serve as the basis for a Title VII claim. It certainly was not the intent of the United States Congress in enacting Title VII that it be so broad in scope. Further, Grube's position, it seems to us, is actually antithetical to Title VII's intended purpose of preventing workplace discrimination based

6

on gender. In enacting Title VII, 'Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.' Sheehan v. Donlen Corp., 173 F.3d 1039, 1045 (7th Cir. 1999) (quoting Sprogis v. United Air Lines, Inc., 444 F.2d 1194, 1198 (7th Cir. 1971).) Grube urges this court to take a position that, rather than eradicating gender stereotypes that pervade the workplace, instead *reinforces* them. That is because Grube's theory is itself based upon a gender-specific stereotype-- that women should be the family caregivers and should remain at home during the evening hours. Quite simply, Grube's position that her transfer to the second shift can support a claim of constructive discharge is not tenable." (Id. at 729.)

Here, were this court to accept Massaro's position, any transfer of an alleged sexually harassed employee, male or female, to a different shift away from the alleged harasser could serve as the basis for a Title VII claim. Clearly, this is the diametrically opposite reaction Title VII seeks from an employer. To take an entirely reasonable reaction of an employer, getting a plaintiff away from the alleged harasser, and then attempting to use that as the basis for an alleged adverse employment action simply flies in the face of everything Title VII teaches employers and is therefore not an adverse action at all!

Regardless, the point remains that, as a matter of law, a mere change in shift, which is all this plaintiff can allege, is not sufficient to constitute an adverse employment action and this § 1983 action under Count III must be dismissed accordingly. As the court concluded in Thomas, supra, that plaintiff:

"… seems to suggest that a shift change was an adverse employment action because it caused him to suffer severe depression that necessitated medical treatment and counseling. For the purposes of Title VII, however, an adverse employment action must be 'materially adverse,' in that it 'significantly alters the terms and conditions of the employee's job.' See Griffin v. Potter, 356 F.3d 824, 829 (7th Cir. 2004) (holding that a postal employee did not suffer an adverse employment action when the postal service, among other actions, changed her shift). … Title VII does not provide a remedy for actions like those here that do not affect an employee's terms of employment. See Smart v. Ball State University, 89 F.3d 437, 441 (7th Cir. 1996)." (145 F.Appx. at 184.)

7

## III.

## THERE WAS NO DIRECT, PERSONAL INVOLVEMENT BY THESE TWO DEFENDANTS, THUS NO INDIVIDUAL LIABILITY UNDER § 1983.

The second basis for dismissal is that these two defendants were not directly, personally

involved in any alleged deprivation of any alleged constitutional right for purposes of individual

liability under § 1983.  Importantly, at best Massaro has alleged these two defendants were in a

supervisory position to the alleged direct harasser, defendant Guy Johnson, and will undoubtedly

argue in resistance to this motion that not only did these defendants do nothing to stop that

harassment, but instead demeaned and bullied plaintiff with repeated comments and conduct,

essentially attacking his perceived sexual orientation.  But nowhere has plaintiff alleged in the

Complaint, because he cannot, that these two defendants were actual decision makers in any

disciplinary decisions regarding him or Johnson, and, fatal to his claim, he has actually alleged

facts which demonstrate that the matter was reported for an internal affairs investigation and,

indeed, specifically alleges that ultimately Johnson was terminated (see factual averment ¶ 2).

Simply put, the alleged belittling comments by these defendants and their alleged lack of

enthusiasm in pursuing Massaro's allegations is not enough, even on motion to dismiss, to

support a finding of personal involvement by these two defendants for purposes of individual

liability under § 1983.

In support, as stated in Miller v. Hubbard, 2004 U.S. Dist. LEXIS 3182 (S.D. Ind. 2004):

> "A court will not find individual liability under § 1983 based only on one official
> supervisory rule over another.  Zimmerman v. Tribble, 226 F.3d 568, 574 (7th Cir. 2000).
> In addition to deliberate indifference, there must be personal involvement in the alleged
> deprivation to support a viable claim against an individual.  Zentmyer v. Kendall County,
> 220 F.3d 805, 811 (7th Cir. 2000).  'Although direct participation is not necessary, there
> must at least be a showing that the sheriff acquiesced in some demonstrable way in the
> alleged constitutional violation.'  Palmer, 327 F.3d at 594.

8

Here, no reasonable jury could find personal participation on the part of the sheriff." (Miller at *13.)

An important distinction must be made at this point. Plaintiff will undoubtedly claim that in addition to "deliberate indifference," which he does allege, there was personal involvement here because of these defendants' comments and conduct. But the distinction is that these defendants were not involved in any deprivation of a viable claim -- they in no way were personally involved in Johnson's male on male sexual harassment. At best, they were personally involved in making comments regarding plaintiff's perceived sexual orientation. As insensitive as this court may find the comments, "harassment based solely upon a person's sexual preference or orientation … is not an unlawful employment practice under Title VII." Hamner v. St. Vincent Hospital, 224 F.3d 701, 704 (7th Cir. 2000), citing Ulane v. Eastern Airlines, Inc., 742 F.2d 1081, 1085 (7th Cir. 1984).

Additionally, this court must not lump these two defendants with defendant Osborne or any other alleged decision makers because there is no allegation in this Complaint that defendants Papish and McChurch were actual decision makers in regards to Massaro or Johnson. If these two defendants did not participate in any employment decision "then liability would not attach because of the lack of personal involvement required by § 1983." Kelly v. Municipal Courts of Marion County, 97 F.3d 902, 909 (7th Cir. 1996).

Finally, plaintiff will undoubtedly argue that these two defendants at least facilitated Johnson's male on male sexual harassment, but again, even accepting all of these facts as true, the best he has alleged is "gross negligence" which again is not sufficient to impose individual

9

liability under § 1983.  See Kruse v. Sheahan, 2005 U.S. Dist. LEXIS 9564 (N.D. Ill. 2005),

citing Jones v. City of Chicago, 856 F.2d 985, 992-93 (7th Cir. 1998):

> "Neither negligence nor gross negligence will suffice to impose liability on a supervisor for the actions of a subordinate in the § 1983 context.  Rather, 'supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.  They must in other words act either knowingly, or with deliberate, reckless indifference.' Jones, 856 F.2d at 992-93.  'In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for a § 1983 recovery.'  See Monell v. Department of Social Services, 436 U.S. 658, 691, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978)."

Another important distinction is made in Kruse:  while allegations of these two

defendants' negligence in failing to timely report Johnson's harassment may support a claim

against defendant IDOC, they cannot also be used to support an individual claim against these

two defendants.  As stated in Kruse "such allegations if proven, would arguably support a claim

of Monell's liability against Cook County, not individual liability on the part of the sheriff and

the director.  The individual capacity claims against them in Count I are dismissed." Id. at *4.

As cited in the Motion to Dismiss from Cassara v. State of Illinois, 843 F.Supp. 411, 413

(N.D. Ill. 1994), to state a claim for individual liability against McChurch and Papish, plaintiff's

allegations "must rise to the level of criminal recklessness" an incredibly high standard which

plaintiff's allegations do not approach.  According to plaintiff's allegations, they may have called

him names and even engaged in homophobic conduct towards him, but ultimately the alleged

harassment by Guy Johnson was reported and acted on, and this court cannot, as a matter of law,

state that this conduct rises to this threshold of criminal recklessness.  As stated in Cassara:

> "Knowledge alone is not enough.  The superior's conduct must rise to the level of criminal recklessness.  Santiago v. Lane, 894 F.2d 218 (7th Cir. 1990).  In other words, the supervisor's conduct must evidence 'such wantonness … as is tantamount to a knowing willingness that the constitutional violation occur.'  Whitley v. Albers, 475 U.S.

10

317, 321, 89 L.Ed.2d 251, 106 S.Ct. 1078 (1986) (citing Duckworth v. Franzen, 780 F.2d 645, 652 (7th Cir. 1985))."  (843 F.Supp. at 413.)

On this secondary basis, Count III must be dismissed.


**IV.**

**QUALIFIED IMMUNITY.**

As a third and final, separate basis for dismissing Count III, the distinction between Johnson's male on male sexual harassment and these two defendants' alleged harassment based on plaintiff's sexual orientation must allow for a finding that qualified immunity protects Papish and McChurch from any liability under § 1983.  As stated in Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L.Ed.2d 396, 102 S.Ct. 2727 (1982), qualified immunity protects government officials such as these two defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  As stated in Sornberger v. City of Knoxville, 2006 U.S. App. LEXIS 1394 (7th Cir. 2006):

> "Because qualified immunity protects the defendant not only from liability but also from the burdens of standing trial, courts should determine early in the proceedings whether qualified immunity exists.  See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  To determine whether defendants are entitled to this defense, we follow a two-step analysis.  We first ask whether the plaintiff has asserted the violation of a federal constitutional right.  Id. at 200; Leaf, 400 F.3d at 1080.  If such a violation did occur, we then determine whether the right was so clearly established at the time of the alleged violation that a reasonable officer would know that his actions were unconstitutional.  Saucier, 533 U.S. at 202; Anderson, 43 U.S. at 640."  (Id. at *12.)

This plaintiff failed both steps -- he has not asserted a violation of a federal constitutional right nor violation of a right so clearly established that Papish and McChurch would know their actions were unconstitutional.

11

Defendants assert that plaintiff has failed to allege a violation of a federal constitutional right.  Plaintiff's allegations in this case lead to the same conclusion the Seventh Circuit drew in Hamm v. Weyauwega Milk Products, Inc., 332 F.3d 1058, N. 62 (7th Cir. 2003):

> "Even drawing all reasonable inferences in Hamm's favor, his litany of complaints about the actions of his co-workers inescapably relate to … their perceptions of Hamm's sexual orientation."

The same must be said here -- even drawing all reasonable inferences in Massaro's favor, his litany of factual allegations all inescapably relate to these two defendants' perceptions of his sexual orientation.

Giving plaintiff the benefit of all of his allegations, here, then, are all of the allegations against McChurch and Papish:

- Papish, upon being made aware of Johnson's conduct toward plaintiff, told plaintiff: "You can either confront him or suck him off, and you're not the type to confront him."

- Papish then said, "something must have happened to you as a kid, some janitor, school teacher or priest must have touched you or broke it off in you."

- "… McChurch, Papish, … frequently and repeatedly ridiculed plaintiff for not (in his appearance and manner) fitting the masculine stereotype … ."

- Papish insisted that he be the union representative who accompanied plaintiff to plaintiff's interviews with the Internal Affairs officers about plaintiff's complaints, despite the fact that Papish was one the perpetrators and despite plaintiff's request for a different union representative.

- In the interviews with the Internal Affairs, Papish laughed out loud as plaintiff gave his account to the investigators.

12

- Papish repeatedly referred to plaintiff … in person and over the intercom at work as Sergeant Dangle - a reference to a homosexual character in the television series Reno 911.

- Papish asked plaintiff if he wore "pink hot pants," asked plaintiff if he danced at and frequented the gay bars, and called plaintiff gay.

- Papish tried to rub soiled inmate underwear on plaintiff and told plaintiff to "file an incident report about that."

- McChurch attempted to physically intimate plaintiff by kicking in the door of the administrative office, almost hitting plaintiff, and then stood in front of plaintiff with his chest puffed out staring at plaintiff.

- Papish, McChurch … demanded that plaintiff lie to Internal Affairs about their knowledge of the harassment and to leave their names out of it.

- Papish demanded that plaintiff meet with McChurch to "get the story straight."

- McChurch called plaintiff repeatedly to come over to McChurch's house. When plaintiff went to McChurch's home, McChurch told plaintiff to lie about his involvement and threatened plaintiff by showing the plaintiff pictures of McChurch performing karate saying "I'm the best at karate, I'm a weightlifter, you need to listen to me."

- … Papish attempted to convince plaintiff not to report the conduct and offered to help him get a lawyer and get "a lot of money out of this" if he cooperated.

- Papish came to plaintiff's home and attempted to intimate plaintiff into not reporting the behavior."

13

Again, this is certainly a "litany of complaints" but they all "inescapably" relate to perceptions of Massaro's orientation.  Even accepting as true plaintiff's allegations that these two defendants were among the group attempting to bully plaintiff into not reporting them, the actions they were attempting to bully plaintiff into not reporting were not male on male sexual harassment by Johnson, but their own homophobic statements and conduct.  And it is simply not a constitutional violation to make the most egregious statements and conduct on the basis of sexual orientation.  "Harassment based solely on a person's sexual preference or orientation (and not on one's sex) is not an unlawful employment practice under Title VII."  Hamner v. St. Vincent Hospital & Healthcare Center, 224 F.3d 701, 704 (7th Cir. 2000).

Plaintiff has alleged virtually every other fact in his Amended Complaint, but he is silent on whether he is actually homosexual or heterosexual.  If the former, his claim fails as a matter of law.  If the latter, there is conflicting case law, certainly in the Seventh Circuit, as evidenced by Judge Posner's concurrence in Hamm v. Weyauwag Milk Products, supra, and this court should determine as a matter of law at this early juncture of the case that these two defendants are entitled to qualified immunity from liability because a reasonable person could not have been aware that there may be some distinction between harassing a homosexual male regarding his sexual orientation (which is not illegal) and harassing a heterosexual male over his perceived orientation (which may be).  Simply put, if, as evidenced by Hamm, the Seventh Circuit can't decide whether this is a clearly established constitutional right, how can these two defendants (or, pursuant to the test, how can any "reasonable person") be held to the standard of having known this was a clear violation of a constitutional right?

14

As a matter of law, this court must determine that these defendants could not have

reasonably known and on this third and final basis Count III must be dismissed.

**V.**

**IF THE COURT DISMISSES THE FEDERAL COUNT, COUNT III, COUNT IV MUST BE DISMISSED FOR LACK OF JURISDICTION.**

If the court dismisses Count III on any of the bases asserted herein, then defendants

would likewise ask the court to dismiss Count IV, the State claim for intentional infliction of

emotional distress, as to them.  28 U.S.C. § 1367(c)(3); see Vukadinovich v. Board of School

Trustees, 978 F.2d 403, 415 (7th Cir. 1992):  "It is well established that if federal claims are

dismissed before trial, the federal district courts should generally dismiss the state law claims as

well."  And Vakharia v. Swedish Covenant Hospital, 987 F.Supp. 633, 643 (N.D. Ill. 1997):

> "Ordinarily, if a court rules against a plaintiff on all federal claims short of trial the pendant state law claims are dismissed without prejudice."

See also Phelan v. Cook County, 2004 U.S. Dist. LEXIS 21345 (N.D. Ill. 2004)

(dismissing intentional infliction of emotional distress claims where the § 1983 claims were no

longer pending).

**VI.**

**COUNT IV MUST BE DISMISSED ON ITS MERITS.**

Even if this court were to rule against these defendants on the § 1983 claims, Count IV

must be dismissed because the plaintiff does not begin to approach the exceedingly high

threshold for alleging a claim for intentional infliction of emotional distress under Illinois

common law.  Defendants have already previously recited all of plaintiff's allegations against

them and in a case with, at best, some name calling and perhaps homophobic bullying, along the

15

road to actually reporting plaintiff's allegations of sexual harassment and getting the alleged

harasser fired, these allegations do not rise to such a level to sustain an action for intentional

infliction of emotional distress.

Illinois law demands that to state a cause for intentional infliction of emotional distress,

plaintiff must allege conduct which "must be truly extreme and outrageous."  As explained in

Honaker v. Smith, 256 F.3d 477, 490 (7th Cir. 2001):

> "The tort of intentional infliction of emotional distress has been recognized in
> Illinois since 1961, when the Illinois Supreme Court explained that persons could be
> liable under the tort only for acts truly 'outrageous,' that is, an 'unwarranted intrusion . . .
> calculated to cause severe emotional distress to a person of ordinary sensibilities.'
> Knierim v. Izzo, 22 Ill.2d 73, 174 N.E.2d 157, 164 (Ill. 1961) (quoting Slocum v. Food
> Fair Stores of Fla., 100 So. 2d 396 (Fla. 1958)).  More recently, in McGrath v. Fahey,
> 126 Ill.2d 78, 533 N.E.2d 806, 809, 127 Ill.Dec. 724 (Ill. 1988), the Illinois Supreme
> Court set forth three requirements necessary to demonstrate the intentional infliction of
> emotional distress: (1) the conduct involved must be truly extreme and outrageous; (2)
> the actor must either intend that his conduct inflict severe emotional distress, or know
> that there is at least a high probability that his conduct will cause severe emotional
> distress and (3) the conduct must in fact cause severe emotional distress. See 533 N.E.2d
> at 809.  (emphasis in original). This tort does not require a contemporaneous physical
> impact or injury. See Corgan v. Muehling, 143 Ill.2d 296, 574 N.E.2d 602, 609, 158
> Ill.Dec. 489 (Ill. 1991).  It is clear, however, that 'the tort does not extend to 'mere insults,
> indignities, threats, annoyances, petty oppressions, or other trivialities.'  McGrath, 533
> N.E.2d at 809 (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). Instead, the
> conduct must go beyond all bounds of decency and be considered intolerable in a
> civilized community. See Kolegas v. Heftel Broad Corp., 154 Ill.2d 1, 607 N.E.2d 201,
> 211, 180 Ill.Dec. 307 (Ill. 1992); Campbell v. A.C. Equip. Servs. Corp., Inc., 242
> Ill.App.3d 707, 610 N.E.2d 745, 749, 182 Ill.Dec. 876 (Ill.App.Ct. 1993).  Thus, to serve
> as a basis for recovery, the defendant's conduct must be such that the 'recitation of the
> facts to an average member of the community would arouse his resentment against the
> actor, and lead him to exclaim: Outrageous!' Doe v. Calumet City, 161 Ill.2d 374, 641
> N.E.2d 498, 507, 204 Ill.Dec. 274 (Ill. 1994)  (quoting Restatement (Second) of Torts §
> 46 cmt. d (1965)) (internal quotation marks omitted). Whether conduct is extreme and
> outrageous is judged on an objective standard, based on the facts of the particular case.
> See Id."

The most serious allegations in this case regarding defendant Papish is that he "**tried** to

rub soiled inmate underwear on plaintiff … ." (Amended Complaint, p. 6, ¶ 9(i).)  The only

16

remotely serious allegation against McChurch is that he "attempted" to "intimidate plaintiff by

kicking in the door of the administration office, almost hitting plaintiff, and then stood in front of

plaintiff with his chest puffed out staring at plaintiff." If "trying" to do something, and standing

in front of a plaintiff with his chest puffed out amounts to intentional infliction of emotional

distress, this court may as well open the door to all allegedly bullying and intimidating conduct.

Illinois law, as established in the Seventh Circuit in Van Stan v. Fancy Colours & Co., 125 F.3d

563, 567-568 (7th Cir. 1997), mandates that Count IV must be dismissed because it does not

begin to meet the extremely rigorous test for outrageous conduct:

> "Under Illinois law, which the parties both agree applies, a plaintiff may recover damages for intentional infliction of emotional distress only if he establishes that (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress. Harriston v. Chicago Tribune Co., 992 F.2d 697, 702 (7th Cir. 1993) (quoting McGrath v. Fahey, 126 Ill.2d 78, 127 Ill.Dec. 724, 727, 533 N.E.2d 806, 809 (Ill. 1988)). Conduct is extreme and outrageous only if 'the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency. . . .' 992 F.2d at 702-03 (quoting Public Fin. Corp. v. Davis, 66 Ill.2d 85, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (Ill. 1976)). 'Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' do not amount to extreme and outrageous conduct, nor does conduct 'characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.' Public Fin. Corp., 4 Ill.Dec. at 654, 360 N.E.2d at 767. Moreover, we judge whether conduct is extreme and outrageous on an objective standard based on all the facts and circumstances of a particular case. Harriston, 992 F.2d at 703; McGrath, 127 Ill.Dec. at 729, 533 N.E.2d at 811. Thus, to serve as a basis for recovery, the defendant's conduct must be such that the 'recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!' Doe v. Calumet City, 161 Ill.2d 374, 204 Ill.Dec. 274, 283, 641 N.E.2d 498, 507 (Ill. 1994) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).
>
> In the employment context, Illinois courts have recognized that personality conflicts and questioning of job performance are 'unavoidable aspects of employment' and that 'frequently, they produce concern and distress.' Heying v. Simonaitis, 126 Ill.App.3d 157, 81 Ill.Dec. 335, 342, 466 N.E.2d 1137, 1144 (Ill.App.Ct. 1984). The courts have reasoned, however, that if such incidents were actionable, nearly all

17

employees would have a cause of action for intentional infliction of emotional distress. 81 Ill.Dec. at 342, 466 N.E.2d at 1144.  Thus, Illinois courts have limited recovery to cases in which the employer's conduct has been truly egregious. See, e.g., Pavilon v. Kaferly, 204 Ill.App.3d 235, 149 Ill.Dec. 549, 555-56, 561 N.E.2d 1245, 1251-52 (Ill.App.Ct. 1990) (the employer, knowing that the plaintiff was susceptible to emotional distress, offered her money for sexual favors, fired her after she refused, and after he fired her, threatened to kill her, to rape her, and to file a legal action challenging her rights to custody of her child and attempted to disrupt her new employment relationship); Milton v. Illinois Bell Tel. Co., 101 Ill.App.3d 75, 56 Ill.Dec. 497, 501, 427 N.E.2d 829, 833 (Ill.App.Ct. 1981) (the employer engaged in an extensive course of disciplinary and harassing conduct to coerce the plaintiff to falsify work reports).

In contrast, Illinois courts have denied recovery for distress resulting from recognizably reprehensible conduct which has been linked to an employer's legitimate interest. For example, in Lundy v. Calumet City, 209 Ill.App.3d 790, 153 Ill.Dec. 874, 876, 567 N.E.2d 1101, 1103 (Ill.App.Ct. 1991), an Illinois appellate court held that the plaintiffs, several police officers, who were suspended after their psychological test results indicated that the tests were indeterminate, failed to state a claim for intentional infliction of emotional distress. In Lundy, the plaintiffs alleged that their supervisor stripped them of their badges and guns, made public statements asserting that they had either manipulated the tests or were suffering from mental illness, cloaked those statements as official findings in an official order, and purposefully sent the order to the plaintiffs unsealed, uncovered and publicly through other officers. 153 Ill.Dec. at 876, 567 N.E.2d at 1103.  In dismissing the complaint, the court emphasized the supervisor's legitimate interest in assuring the mental stability of his officers and explained that while a legitimate interest does not give an employer carte blanche to pursue that interest through any means, the fact that an employer's conduct might cause an employee embarrassment or distress will not convert otherwise unactionable insults or indignities such as the ones that the plaintiffs suffered into the extreme and outrageous conduct necessary for recovery. 153 Ill.Dec. at 876-77; 567 N.E.2d at 1104-03.  Likewise in Harris v. First Fed. Sav. & Loan Ass'n of Chicago, 129 Ill.App.3d 978, 85 Ill.Dec. 89, 90-92, 473 N.E.2d 457, 458-60 (Ill.App.Ct. 1984), an Illinois appellate court held that a plaintiff who alleged that her employer criticized, demoted, and discharged her after she reported allegedly criminal activity to her supervisor did not state a claim because she did not allege that her employer engaged in this course of conduct to coerce her into engaging in illegal activity. While the court characterized the employer's conduct as 'reprehensible,' the court held that it did not rise to the level of extreme and outrageous conduct because the employer merely acted out of displeasure with the plaintiff's exercise of judgment regarding another employee's conduct.  85 Ill.Dec. at 92, 473 N.E.2d at 460.

Recognizing this high threshold, this Court and other federal courts applying Illinois law have denied recovery to plaintiffs who alleged that their employers subjected them to a continuous series of intentionally discriminatory acts. For example, in Harriston, 992 F.2d at 703, we held that the plaintiff failed to allege conduct that rose to

18

the level of extreme and outrageous conduct even though she contended that among other
things her employer refused to allow her to supervise white subordinates, reprimanded
her for no reason, refused to allow her to participate in a management incentive fund,
forced her out of her management position, promised her a promotion she never received,
took away from her major accounts and gave her less lucrative  accounts in return,
excluded her from office activities, monitored her telephone calls with an eavesdropping
device and ignored concerns for her health and safety after her personal property was
damaged on company property. Id; see also Briggs v. North Shore Sanitary Dist., 914
F.Supp. 245, 252 (N.D. Ill. 1996) (allegations that the plaintiff's employer and fellow
employees hung a pickaninny doll in her office, subjected her to racial slurs, excluded her
from office social activities, placed her on probation and refused to train her properly did
not rise to the level of extreme and outrageous conduct while allegations that co-workers
exposed her to toxic fumes for more than eight hours did)."

Clearly, if the conduct in the cases collected above did not constitute extreme and

outrageous conduct, as a matter of law, this plaintiff's allegations cannot meet the stringent tests

either.  Moreover, the alleged misconduct of Guy Johnson, Albert Osborne, Jeff Papish and Jeff

McChurch must be examined under this standard based upon their respective individual actions

towards plaintiff and not as a herd, as the plaintiff has pled in Count IV.  Bootstrapping Guy

Johnson's alleged sexual harassment of the plaintiff to the alleged misconduct of Papish and

McChurch, is not permitted under the above-cited case authority.

### CONCLUSION

For the foregoing reasons, plaintiff respectfully asks that both Counts III and IV be

dismissed with prejudice as to these two defendants, Jeff Papish and Jeff McChurch with costs

assessed against the plaintiff.

Respectfully submitted,


By: /s/Stephen T. Fieweger

19

For:
KATZ, HUNTOON & FIEWEGER, P.C.
Attorneys for Defendants Jeff Papish and Jeff McChurch
1000 - 36th Avenue
P.O. Box 950
Moline, IL 61266-0950
Telephone:  309-797-3000
Fax:  309-797-2167
Email: stfieweger@katzlawfirm.com
s:\wp\worddoc\12743001.02M


## CERTIFICATE OF SERVICE

I hereby certify on February 23, 2006, I electronically filed plaintiff's Memorandum of Law in Support of Motion to Dismiss using the CM/ECF System which will send notification of this filing to the following:

Daniel S. Alcorn
Attorney for Anthony Massaro
Stoerzbach Morrison, P.C.
139 South Cherry Street
Galesburg, IL  61402-1328
alcornd@galesburglaw.com

Mark D. Churchill
Attorney for Albert Osborne
Churchill & Churchill
1610 5th Avenue
Moline, IL  61265
cclaw@churchillfirm.com

Jonathan C. Goldman
Attorney for Guy Johnson
Goldman & Ehrlich
19 S. LaSalle St., Suite 1500
Chicago, IL  60603
jon@goldmanehrlich.com

Sarah R. Kerley
Attorney for IDOC
Illinois Attorney General
500 S. Second Street
Springfield, IL  62706
skerley@atg.state.il.us

I hereby certify that on February 23, 2006, I mailed by United States Postal Service, documents to the following non-registered participants:

None.

By: /s/  Stephen T. Fieweger

s:\wp\worddoc\12743001.02M