UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| ANTHONY MASSARO, )<br>)<br>    Plaintiff, )<br>)<br>vs. )<br>) CASE NO. 05-4087<br>ILLINOIS DEPARTMENT OF )<br>CORRECTIONS; GUY JOHNSON; )<br>JEFF McCHURCH;  JEFF PAPISH; )<br>and ALBERT OSBORNE, )<br>)<br>    Defendants. ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
(McCHURCH AND PAPISH) MOTION TO DISMISS AMENDED COMPLAINT**

Now comes Plaintiff, Anthony Massaro, by Stoerzbach, Morrison, P.C., his attorneys, and pursuant to CDIL – LR 7.1(B)(2), submits his memorandum of law in opposition to the Motion to Dismiss Amended Complaint filed by Defendants' McChurch and Papish:

    **I.**    <u>**Count III States a Claim Upon Which Relief May Be Granted.**</u>

    A.    <u>Plaintiff has adequately alleged an adverse employment action – sexual harassment.</u>

    1.    It is well established that FRCP 8(a) provides a simplified notice pleading standard in cases such as this. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).  There is no heightened pleading requirement for same-sex sexual harassment cases. *Schmedding v. Tnemec Co., Inc.*, 187 F.3d 862, 865 n.4 (8th Cir. 1999).

    2.    The question raised by Defendants' FRCP 12(b)(6) motion is whether relief is possible under any set of facts that could be established consistent with the allegations. *Williams v.*

*Seniff*, 342 F.3d 774, 792 (7th Cir. 2003). A complaint should not be dismissed "unless it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *Rothner v. City of Chicago*, 929 F.2d 297 (7th Cir. 1991). As a practical matter, a dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. *Schmedding v. Tnemec Co., Inc.*, 187 F.3d 862, 864 (8th Cir. 1999). Clearly, Count III of Plaintiff's Amended Complaint meets that liberal standard.

3.      Sexual harassment is adverse employment action. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2406 (1986); *Harris v. Forklift Sys.*, 510 U.S. 17, 23, 114 S.Ct. 367, 371 (1993). Plaintiff has sufficiently alleged sexual harassment. Same-sex sexual harassment is actionable under Title VII. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998).

4.      Defendants assert only that Plaintiff has failed to adequately allege he was subjected to adverse employment action. In this connection, Defendants place an artificially narrow focus on a single allegation in the Amended Complaint related to Plaintiff's reassignment to a different shift, and Defendants argue this alone is insufficient to constitute adverse employment action. While the Seventh Circuit has allowed a correctional officer plaintiff to pursue a Section 1983 retaliation claim based on an unfavorable change in shift schedule (See *Spiegla v. Hull*, 371 F.3d 928, 933 (7th Cir. 2004)), that is not the thrust of Plaintiff's claim in the instant case. Plaintiff does not allege a shift change as "adverse employment action." Defendants completely ignore Plaintiff's extensive allegations of sexual harassment, which allegations are, in and of themselves, sufficient to allege "adverse employment action." While the shift change likely constitutes a "<u>tangible</u> employment

action" for purposes of the vicarious employer liability analysis under Title VII, it is not relied upon as the "<u>adverse</u> employment action." These are two distinct concepts in the analysis.

5.   Count III of Plaintiff's Amended Complaint (Section 1983 claim against these Defendants) incorporates the allegations of the Common Count and Count I in which Plaintiff makes extensive, factually specific allegations of sexual harassment which interfered with Plaintiff's ability to perform his job. Plaintiff also makes the following general allegation in Count I: "Taken as a whole, the ridicule, unwanted sexual advances, and other conduct of a sexual nature, constituted an ongoing and continuing course of conduct and was severe and pervasive, had the purpose or effect of unreasonably interfering with Plaintiff's work performance and created an intimidating, hostile and offensive work environment for Plaintiff affecting the terms, conditions and privileges of his employment and substantially interfered with Plaintiff's ability to perform his job, all in violation of 42 U.S.C. § 2000e."

6.   Finally, Plaintiff alleges in Count III: "Johnson, McChurch, Papish, and Osborne frequently and repeatedly ridiculed Plaintiff for not (in his appearance and manner) fitting the masculine male stereotype; however, female employees who do not (in appearance and manner) fit the feminine female stereotype were not ridiculed by these supervisors." Count III then goes on to allege that the acts of these Defendants in ridiculing Plaintiff constituted intentional sexual harassment of Plaintiff. This is clearly sufficient notice pleading.

B.   <u>Plaintiff has alleged Defendants' personal and direct involvement in the deprivation of his Constitutional rights</u>.

1.   Defendants next assert that Plaintiff has failed to "plead facts establishing personal and direct involvement on the parts of these two superiors of the deprivation of his equal protection right." Defendants then go on to mischaracterize the substance of Plaintiff's Amended Complaint in this regard.

2. Although not required to do so, Plaintiff's Amended Complaint does set forth specific factual allegations describing the direct personal involvement of McChurch and Papish in the constitutional tort alleged.

3. To be held individually liable, "supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988). The individual defendant must have been personally involved in or acquiesced in the alleged constitutional violation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

4. In that regard, the Amended Complaint states:

> 7. Defendants Johnson, McChurch, Papish and Osborne were at all material times supervisory employees of Employer and were acting under color of state law in the course of their employment with Employer.
>
> 8. Johnson, McChurch, Papish, and Osborne were at all material times supervisory employees of Employer who had immediate or successively higher authority over Plaintiff. Furthermore, Papish was at all material times the vice president of the union local representing Plaintiff.
>
> \*   \*   \*
>
> 3. Approximately one month after the harassing behavior began, Plaintiff reported it to McChurch, Papish, and Osborne. Plaintiff was told by McChurch, Papish and Osborne that Johnson was probably gay and "coming out," and nothing was done about it.
>
> 4. Papish, upon being made aware of Johnson's conduct towards Plaintiff, told Plaintiff: "You can either confront him or suck him off, and you're not the type to confront him." Papish then said: "Something must have happened to you as a kid, some janitor, school teacher or priest must have touched you or broke it off in you."
>
> 5. Defendants failed to take timely and appropriate corrective action to stop the harassment.

4

  6.  Johnson, McChurch, Papish, and Osborne frequently and repeatedly ridiculed Plaintiff for not (in his appearance and manner) fitting the masculine male stereotype; however, female employees who do not (in appearance and manner) fit the feminine female stereotype were not ridiculed by these supervisors.

*   *   *

  (b)  Papish insisted that he be the union representative who accompanied Plaintiff to Plaintiff's interviews with the Internal Affairs officers about Plaintiff's complaints, despite the fact that Papish was one of the perpetrators and despite Plaintiff's request for a different union representative.

  (c)  In the interviews with Internal Affairs, Papish laughed out loud as Plaintiff gave his account to the investigators.

  (d)  Papish repeatedly referred to Plaintiff (to Plaintiff and to others), in person and over the intercom at work, as "Sgt. Dangle" – a reference to a homosexual character in the television series "Reno 911."

*   *   *

  (h)  Papish asked Plaintiff if he wore "pink hot pants," asked Plaintiff if he danced at and frequented the gay bars, and called Plaintiff gay.

  (i)  Papish tried to rub soiled inmate underwear on Plaintiff and told Plaintiff to "file an incident report about that."

*   *   *

  (k)  McChurch attempted to physically intimidate Plaintiff by kicking in the door of the administration office, almost hitting Plaintiff, and then stood in front of Plaintiff with his chest puffed out staring at Plaintiff.

*   *   *

  (s)  After the Internal Affairs investigation began, Papish, McChurch and Osborne demanded that Plaintiff lie to Internal Affairs about their knowledge of the harassment and to leave their names out of it. Papish demanded that Plaintiff meet with McChurch to "get the story straight." McChurch called Plaintiff repeatedly to come over to McChurch's house. When Plaintiff went to McChurch's home, McChurch told Plaintiff to lie about his involvement and threatened Plaintiff by showing Plaintiff pictures of McChurch performing karate, saying: "I'm the best at karate, I'm a weightlifter, you need to listen to me."

  (t)  Osborne came to Plaintiff's home and insisted that Plaintiff meet with him and Papish, and at the meeting Papish attempted to convince Plaintiff not

5

      to report the conduct and offered to help him get a lawyer and get "a lot of money out of this" if he cooperated.

      (u)    Papish came to Plaintiff's home and attempted to intimidate Plaintiff into not reporting the behavior.

5.    Certainly, these allegations should more than suffice for purposes of pleading that McChurch and Papish were personally involved in the complained of conduct. Despite Defendants' implication at page 7 of their brief, there is no pleading requirement that Plaintiff must allege these Defendants were "decision-makers." They cite no authority for the implied proposition. Neither does the fact Plaintiff alleges the matter was eventually referred to and investigated by Internal Affairs, or that Johnson was eventually discharged, defeat Plaintiff's claim against these Defendants. Plaintiff does not allege (and these Defendants do not argue) that McChurch and Papish were the ones who eventually reported the matter to Internal Affairs or that McChurch or Papish participated in or even recommended Johnson's discharge. The Amended Complaint alleges that despite their supervisory status, McChurch and Papish knew about Johnson's sexual harassment, acquiesced in it, and did nothing about it. This is sufficient notice pleading.

6.    The case of *Lewis v. Chicago Housing Authority*, 1998 U.S.Dist. LEXIS 17533, cited by Defendants is easily distinguishable. First, it is not a sexual harassment case. The alleged constitutional tort involved plaintiff being placed on unpaid administrative leave. Secondly, in *Lewis* the only allegation of personal involvement by the individual defendant was a single remark to the female plaintiff (calling her "little girl Sergeant"), which remark was not alleged to be part of a pattern of sexual harassment. Neither did the single remark indicate the individual defendant's knowledge of, or participation in, the alleged constitutional tort in that case. Certainly, that single remark is significantly less serious both in quality and quantity than the above-referenced allegations of involvement by McChurch and Papish.

6

7.  Much more closely analogous is the case of *Longstreet v. IDOC*, 1999 U.S.Dist. LEXIS 16205 (September 29, 1999), in which the plaintiff, a corrections officer in a prison, alleged that she had been sexually harassed by two fellow officers and sought to hold the warden individually liable under Section 1983 for the actions of these officers. The plaintiff in *Longstreet* alleged that although she had complained about the sexual harassment to the warden, he had done nothing to prevent or correct the wrongful conduct. *Id*. at 2-4, 10. The warden sought a dismissal contending the plaintiff had failed to adequately plead his personal involvement. The U.S. District Court for the Northern District of Illinois held that if the allegations were true, the warden had "turned a blind eye" to the plaintiff's plight and these were sufficient to withstand the dismissal motion. *Id*. at 10.

8.  Likewise, in *Kessel v. Cook County*, 2001 U.S. Dist. LEXIS 10300 (July 20, 2001), the U.S. District Court for the Northern District of Illinois upheld the sufficiency of the plaintiff's proposed amended complaint alleging individual liability on the part of her supervisors under Section 1983 in a sexual harassment case. *Id*. at 11. The plaintiff alleged that her supervisors knew of, and some had witnessed and acknowledged, the sexual harassment by her co-worker, yet none of the supervisors had done anything to correct the situation even after the plaintiff had complained to them. *Id*. at 2-3.

9.  Clearly, *Longstreet* and *Kessel* are more analogous than *Lewis* to the facts of the instant case, and they serve as ample support for denial of Defendants' motion in this regard.

C.  <u>Defendants are not entitled to qualified immunity</u>.

1.  Public officials are entitled to qualified immunity from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73

7

L.Ed.2d 396, 102 S.Ct. 2727 (1982). The inquiry focuses on the objective legal reasonableness of the action, not the state of mind or good faith of the officials in question. *Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 1998).

    2.     "A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . . . [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272, 281 (2001).

    3.     For purposes of Defendants' motion, the particular constitutional right at issue is the right of a state employee to be free from same-sex, male on male, sexual harassment by his supervisors because of the employee's sex -- not because of the employee's sexual orientation or perceived sexual orientation.

    4.     It has been clearly established that an employee has the right to be free from same sex sexual harassment based upon the employee's sex. Plaintiff's theory is that sufficient evidence exists of Plaintiff being ridiculed for not conforming to gender stereotypes to demonstrate that the discrimination was "because of sex" – as opposed to sexual orientation. Plaintiff's alternative theory is that the harassment (at least by Johnson) was sexual in nature and based on the harasser's sexual attraction to Plaintiff, and on that basis discrimination "because of sex" – as opposed to sexual orientation -- can be established. Plaintiff will address the gender stereotyping theory first.

      a.      *Gender Stereotyping Theory*.

      i.      The Supreme Court and the Seventh Circuit have both held that the equal protection clause contains a "federal constitutional right to be free from gender discrimination" that does not "serve important government objectives" and is not "substantially related to those objectives." *Davis v. Passman*, 442 U.S. 228, 234-35, 60 L.Ed.2d 846, 99 S.Ct. 2264 (1979); *Huebschen v. Dept. of Health & Social Services*, 716 F.2d 1167, 1171 (7th Cir. 1983). This principal has universally been held to apply to sexual harassment by a state employer and makes such conduct actionable as sexual harassment under Section 1983. *Bohen v. City of East Chicago*, 799 F.2d 1180 (7th Cir. 1986)(citing cases).

      ii.      In the 1989 decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 104 L.Ed.2d 268, 109 S.Ct. 1775 (1989), the United States Supreme Court held that gender discrimination could be established by evidence of the discriminatory application of gender stereotyping and stated "we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group, for 'in forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.' " (quoting *Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 707 n.13, 55 L.Ed.2d 657, 98 S.Ct. 1370 (1978)).

      iii.      In 1998, the United States Supreme Court unanimously held that same-sex sexual harassment is actionable under Title VII as sexual harassment. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 140 L.Ed. 2d 201, 118 S. Ct. 998 (1998). In fact, *Oncale* involved a case in which, among other things, the plaintiff (a heterosexual male) was taunted by other males as being a homosexual.

      iv.      Following *Oncale*, the Eighth Circuit, in *Schmedding v. Tnemec Co., Inc.*, 187 F.3d 862 (1999), reversed the District Court's dismissal of plaintiff's same-sex sexual harassment claim under FRCP 12(b)(6). The Eighth Circuit held that the plaintiff had adequately alleged facts sufficient to state a claim that he was being harassed "because of sex." The complaint included allegations that, among other things, the plaintiff was: patted on the buttocks; asked to perform sexual acts; given derogatory notes referring to his anatomy; called names such as "homo" and "jerk off;" and was subject to the exhibition of sexually inappropriate behavior by others including unbuttoning of clothing, scratching of crotches and buttocks; and humping the door frame to the plaintiff's office. The Eighth Circuit stated: "We do not think that, simply because some of the harassment alleged by [the plaintiff] includes taunts of being homosexual or other epithets connoting homosexuality, the complaint is thereby transformed from one alleging harassment based on sex to one alleging harassment based on sexual orientation." *Id*. at 865.

      v.      In 2001, the Third Circuit in *Bibby v. Philadelphia Coca Cola Bottling Co*, 260 F.3d 257 (3d Cir. 2001), affirmed the District Court's summary judgment for the employer in a same-sex sexual harassment case. The Court found that the plaintiff had presented insufficient evidence to support his claim. However, the Court stated that one of the three ways by which a plaintiff alleging same sex harassment might demonstrate that the harassment amounted to discrimination because of sex is that "the harasser was acting to punish the victim's noncompliance with gender stereotypes." *Id.* at 262-63.

      vi.      Also in 2001, the Ninth Circuit in *Nichols v. Sanchez*, 256 F.3d 864, 874 (9th Cir. 2001), held that harassment of a male plaintiff on the basis that he acted "too feminine" was actionable under Title VII.

vii.     Contrary to the implication in Defendants' Memorandum of Law in Support of Motion to Dismiss, the Seventh Circuit has certainly not declined to follow the Supreme Court's *Oncale* and *Price Waterhouse* decisions.  Even before *Oncale*, in *Doe v. City of Bellville*, 119 F.3d 563, 580-83 (7th Cir. 1997), the Seventh Circuit held that where co-workers verbally and physically harassed a young man because he wore an earring, repeatedly asked him whether he was a girl or a boy, and threatened to assault him sexually, he had presented sufficient evidence to support a conclusion that the harassment amounted to discrimination because of sex.  While *City of Bellville* was vacated and remanded on other grounds (*City of Belleville v. Doe*, 523 U.S. 1001, 140 L.Ed.2d 313, 118 S.Ct. 1183 (1998)), this should not be seen as disturbing its gender stereotyping rationale. See *Bibby*, 260 F.3d at 263 n.5.  In 1997, the Seventh Circuit in *Johnson v. Hondo, Inc.*, 125 F.3d 408, 413-14 (7th Cir. 1997), reiterated the reasoning of *City of Belleville* stating:

> "the harassers in *Doe* expressed and exhibited hostility to the way in which plaintiff H. exhibited his sexuality, which *Price Waterhouse v. Hopkins*, 490 U.S. 228, 104 L.Ed.2d 268, 109 S.Ct. 1775, tells us is discrimination "because of" sex.  See generally *Doe*, slip op. at 34-37 (noting that plaintiff H.'s harassers were motivated in part by his failure to conform to stereotypical male standards); *Id*. at 37 ("Just as in *Price Waterhouse*, then, gender stereotyping establishes the link to the plaintiff's sex that Title VII requires.")."

viii.    In 2000, the Seventh Circuit stated in *Spearman v. Ford Motor Co.*, 231 F.3d 1080 (7th Cir. 2000), that same-sex sexual harassment is actionable under Title VII "to the extent that it occurs 'because of' the plaintiff's sex."  (citing *Shepherd v. Slater Steels Corp*, 168 F.3d 998, 1007 (7th Cir. 1999)).  *Spearman* clarified that "sex" meant "biological male or biological female" and not one's sexuality or sexual orientation, and accordingly harassment based solely upon a person's sexual preference or orientation (and not on one's sex) is not an unlawful employment practice under Title VII.  *Id*. (citing *Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1087 (7th Cir. 1984)). *Spearman* affirmed the District Court's summary judgment in favor of the employer on the basis

11

that the record evidence clearly demonstrated that plaintiff's co-workers' harassment of him was motivated by acrimony from work-related disputes and the plaintiff's perceived homosexuality, not because the plaintiff failed to conform to male gender stereotypes.  However, *Spearman* clearly articulated that statements tinged with gender stereotype are evidence that the harassment is based on sex, stating that "according to *Oncale* and *Price Waterhouse*, we must consider any sexually explicit language or stereotypical statements within the context of all of the evidence of harassment in the case, and then determine whether the evidence as a whole creates a reasonable inference that the plaintiff was discriminated against because of his sex." *Id.* at 1085.

    ix.  In *Hamm v. Weyauwega Milk Products, Inc.*, 332 F.3d 1058, 1062 (7th Cir. 2003), the Seventh Circuit had another opportunity to address a same-sex sexual harassment claim at the summary judgment stage, and reiterated that the central question is whether the harassment occurred "because of the plaintiff's sex." (citing *Hamner v. St. Vincent Hosp. & Health Care Center, Inc.*, 224 F.3d 701, 704 (7th Cir. 2000).  The Court relied on *Spearman* and found that in order to evaluate such a claim on summary judgment the court must "consider any sexually explicit language or stereotypical statements within the context of all of the evidence of harassment in the case [to] determine whether the evidence as a whole creates a reasonable inference that the plaintiff was discriminated against because of his sex." (citing *Spearman*, 231 F.3d at 1085).  The evidence in *Hamm*, like *Spearman*, was insufficient to establish that the harassment was because of plaintiff's sex.  The plaintiff had admitted that many of the occurrences complained of were motivated by a belief that plaintiff was not doing his job and by perceptions that he was a homosexual.  *Id.* at 1062-63.  The *Hamm* decision was authored by Judge Williams, with both Chief Judge Flaum and Judge Posner concurring.  Judge Posner wrote a separate concurrence in which he recognized that the case law has now evolved to hold that Title VII protects heterosexuals who are victims of "sex

stereotyping" or "gender stereotyping," and that he did not believe the law had taken the correct or logical direction on this issue. *Id*. at 1066. However, that special concurrence certainly cannot be read to support the proposition set forth by Defendants – that the case law was not clear on the subject. Even with Judge Posner's special concurrence in *Hamm*, the *Hamm* decision (and its rationale) reflects the reasoning of the Seventh Circuit and is consistent with its prior precedent and that of the other Circuits and the United States Supreme Court. Judge Posner's rejection of the Seventh Circuit's reasoning in *Hamm* does not make the law unclear on this subject. In fact, Judge Posner's comments have the opposite effect in that his special concurrence serves to clarify the direction that the case law has taken on this subject.

   x. Defendants' motion is not a summary judgment motion, and the Court has before it only the Amended Complaint, which does not contain the type of evidence utilized by *Spearman* and *Hamm* to defeat the claim. Importantly, Plaintiff in the instant case expressly states in his Amended Complaint that the sexual harassment was because of his sex and because he was perceived as not fitting the male gender stereotype. Plaintiff's allegations related to comments about his sexual orientation must be seen (in the light most favorable to Plaintiff) as evidence of efforts to punish and ridicule Plaintiff because he did not fit the masculine stereotype, not that he was actually perceived as being homosexual.

   xi. Defendants mischaracterize Plaintiff's claim as "making comments regarding one's perceived sexual orientation." Of course, that is not the crux of Plaintiff's claim. Rather, central to Plaintiff's Section 1983 sexual harassment claim against McChurch and Papish is the allegation found in paragraph 6 of the Common Count of the Amended Complaint, which states as follows:

> Johnson, McChurch, Papish, and Osborne frequently and repeatedly ridiculed Plaintiff for not (in his appearance and manner) fitting the masculine male stereotype; however, female employees who do not (in

13

          appearance and manner) fit the feminine female stereotype were not ridiculed by these supervisors.

    xii.    As set forth above, valid claims of sexual harassment based on evidence of gender stereotyping have been distinguished from invalid claims of harassment based upon sexual orientation; and the Seventh Circuit recognizes that comments relating to gender stereotypes are evidence that the harassment is because of sex.

    xiii.    Defendants erroneously argue that Plaintiff's allegations all "inescapably relate" to perceptions of Plaintiff's sexual preference or orientation. That simply ignores and mischaracterizes Plaintiff's Amended Complaint and attempts to cast the allegations in the light most favorable to Defendants.

    b.    *<u>Sexual Attraction Theory</u>*.

    i.    Plaintiff's Section 1983 claim against McChurch and Papish is also based on these Defendants' acquiescence in Johnson's sexual harassment of Plaintiff, which behavior may have been based on a sexual interest Johnson had in Plaintiff. A fair reading of the allegations in the Amended Complaint related to Johnson's conduct toward Plaintiff would certainly give rise to a reasonable inference that Johnson's behavior toward Plaintiff was more in the nature of sexual advances toward Plaintiff. To the extent Johnson was acting out of a sexual motivation, that too is distinguishable from invalid sexual harassment claims based upon sexual orientation. Defendant Johnson's sexual harassment of Plaintiff consisted of several sexual advances, feigned or otherwise, and those sexual advances are sufficient at this pleadings stage to give rise to a reasonable inference that Johnson was motivated in his harassment of Plaintiff out of a sexual desire and attraction to Plaintiff.

    ii.  If that turns out to be the case, then clearly that would constitute a run-of-the-mill sexual harassment case no different than the more common case involving members of opposite gender – the harassment would be based on the fact that Plaintiff is male.

    iii.  In fact, the Amended Complaint alleges that McChurch and Papish told Plaintiff that Johnson was probably gay and "coming out."

    iv.  The Amended Complaint sufficiently alleges that these Defendants were told of the sexual harassment, acquiesced in it, and did nothing about it.

  **II.**  **Count IV Should Not Be Dismissed for Lack Of Supplemental Federal Jurisdiction.**

  1.  Defendants request that Count IV be dismissed as well. Defendants assert that Count IV should be dismissed if the federal claim (Count III) against these Defendants is dismissed. The Court has supplemental jurisdiction of Count IV even in the event Count III is dismissed as against these two Defendants.

  2.  Even were the Court to dismiss Count III as against McChurch and Papish, that would not dispose of that claim as against Johnson, and it would not dispose of all of the other claims based on federal question jurisdiction set forth in the Amended Complaint – all of which are based on the same common nucleus of operative facts and make up the same case or controversy as Count IV. See *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995)(even a loose factual connection between the claims can satisfy the same case or controversy requirement). The factual allegations underlying all of the claims are essentially the same.

  3.  The Court would still have supplemental jurisdiction of Count IV even if McChurch and Papish were parties only to that state law claim. See 28 U.S.C. § 1367(a); *Abbott Laboratories, Inc. v. CVS Pharmacy, Inc.*, 290 F.3d 854, 858 (7th Cir. 2002); *Tamiani Parnters, Ltd. V. Miccosukee Tribe of Indians*, 177 F.3d 1212, 1223-24 (11th Cir. 1999).

4.  Accordingly, there would be no legitimate basis for dismissing Count IV on jurisdictional grounds, even if Count III is dismissed against McChurch and Papish. It would make the most sense and best serve judicial economy for these closely related claims to be tried together in one forum at one time.

5.  Nothing in any of the three cases cited by Defendants for this argument supports the Court's dismissal of Count IV. The case of *Vukadinovich v. Board of School Trustees*, 978 F.2d 403 (7th Cir. 1992), appears to have been decided on the law as it existed before 28 U.S.C. § 1367 governing supplemental jurisdiction became effective in December 1990. The Seventh Circuit makes reference to "pendent jurisdiction" rather than "supplemental jurisdiction" in *Vukadinovich*. Furthermore, the facts of *Vukadinovich* were different in that the Court had dismissed <u>all</u> of the federal claims, not just some of them. *Id*.

6.  In *Vakharia v. Swedish Covenant Hospital*, 987 F.Supp. 633, 643 (N.D.Ill 1997), for purposes of judicial economy, the Court exercised its discretion to retain jurisdiction of supplemental state law claims even though all of the federal claims of the plaintiff had been dismissed. This case certainly does not support Defendants' position. The Court cites the proposition that "Ordinarily, if a court rules against a plaintiff on all federal claims short of trial, the pendent state law claims are dismissed without prejudice." *Id.* However, the Court goes on to state that under 28 U.S.C. § 1367, even under those unusual circumstances where <u>all</u> federal claims are dismissed (not present in the case at bar), the Court is not compelled to dismiss the state law claims. *Id*.

7.  Finally, in *Phelan v. Cook County*, 2004 U.S. Dist. LEXIS 21345 (N.D.Ill 2004), the Court exercised its discretion to dismiss the state law claims because there was "no longer a federal claim pending before this court." The Court in *Phelan* cited *Vukadinovich* and *Vakharia*

16

(distinguished above) in support of its dismissal. *Id.* at 27. Of course, that is not, and will not be, the case here, where even if Defendants' motion is granted as to McChurch and Papish on Count III, that claim will remain as against Defendant Johnson, and other claims over which the Court has federal question jurisdiction will remain as well.

### III. Count IV States A Claim Upon Which Relief May Be Granted.

1. Defendants finally assert that Count IV fails to state a claim upon which relief can be granted because, they contend, it does not allege with sufficient factual specificity a claim of intentional infliction of emotional distress.

2. For purposes of a FRCP 12(b)(6) motion, Count IV of Plaintiff's Amended Complaint is sufficiently pleaded. There is nothing in the Amended Complaint which is inconsistent with Plaintiff's claim for intentional inflection of emotional distress. Plaintiff need not plead his claim with factual particularity.

3. In Count IV of the Amended Complaint, Plaintiff incorporates the Common Count (including the specific factual averments) and then alleges:

> "Defendants' conduct was extreme and outrageous, beyond all bounds of decency usually tolerated by a civilized society; Defendants either intended that this conduct should inflict severe emotional distress, or knew that there was a high probability that this conduct would cause severe emotional distress; and Defendants' conduct did in fact cause Plaintiff to suffer severe emotional distress."

4. That states a claim for intentional infliction of emotional distress under the elements established by *Wilson v. Norfolk & Western Railway Co.*, 187 Ill.2d 369, 383-384, 718 N.E.2d 172, 180 (1999). It cannot be said at this stage of the litigation that Plaintiff can prove no set of facts on which relief may be granted.

WHEREFORE, Plaintiff prays that the Motion to Dismiss Amended Complaint filed by Defendants' McChurch and Papish be denied.

        Respectfully submitted,

        ANTHONY MASSARO, Plaintiff

        s/ DANIEL S. ALCORN
        #06209425
        Attorney for Plaintiff
        STOERZBACH MORRISON, P.C.
        139 South Cherry Street
        P. O. Box 1328
        Galesburg, IL  61402-1328
        Telephone:  309/341-6000
        Telefax:      309/343-7500
        alcornd@galesburglaw.com

**CERTIFICATE OF COUNSEL**
**[CDIL-LR 7.1(B)(4)]**

The undersigned, counsel of record for Plaintiff, hereby certifies that Plaintiff's Memorandum of Law in Opposition to Defendants' (McChurch and Papish) Motion to Dismiss Amended Complaint complies with the type volume limitations set forth in CDIL-LR 7.1(B)(4)(b) & (c), in that (including this Certificate) it contains fewer than 7,000 words (5,576) and fewer than 45,000 characters (29,788 characters), using Microsoft Word 2000 word processing system to count the same.

        s/ DANIEL S. ALCORN
        Attorney for Plaintiff

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on March 8, 2006, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record: Sarah R. Kerley, Assistant Attorney General, 500 South Second Street, Springfield, IL 62706; Mark D. Churchill, Churchill & Churchill, P.C., 1610 Fifth Avenue, Moline, IL 61265; Stephen T. Fieweger, Katz, Huntoon & Fieweger, P.C., 1000 – 36th Avenue, P. O. Box 950, Moline, IL 61266-0950; and Jonathan C. Goldman, Goldman & Ehrlich, 19 South LaSalle Street, Suite 1500, Chicago, IL 60603.

      s/ DANIEL S. ALCORN  
      #06209425  
      Attorney for Plaintiff  
      STOERZBACH MORRISON, P.C.  
      139 South Cherry Street  
      P. O. Box 1328  
      Galesburg, IL 61402-1328  
      Telephone: 309/341-6000  
      Telefax:     309/343-7500  
      alcornd@galesburglaw.com