## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

ANTHONY MASSARO,        )
                               )
           Plaintiff,      )
                               )
       v.                 )     Case No. 05-4087
                               )
ILLINOIS DEPARTMENT OF     )
CORRECTIONS; GUY JOHNSON;  )
JEFF McCHURCH; JEFF PAPISH;  )
And ALBERT OSBORNE,       )
                               )
           Defendants.   )

### ORDER

Before the Court is a Motion to Dismiss by Defendants Jeff McChurch ("McChurch") and Jeff Papish ("Papish"). Defendants ask this Court to dismiss Counts III and IV of Plaintiff's complaint. For the reasons that follow, Defendants' Motion to Dismiss Counts III and IV [#30] is DENIED.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims asserted arise pursuant to Title VII, 42 U.S.C. § 2000e, and 42 U.S.C. § 1983. Moreover, the Court has supplemental jurisdiction to hear Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## BACKGROUND

Plaintiff Anthony Massaro ("Massaro") is an employee of the Illinois Department of Corrections and has worked for the Department of Corrections at the East Moline Correctional Center ("EMCC") since September 15, 2003.   Defendants McChurch and Papish were supervisory employees who had supervisory authority over Massaro.   Additionally, Papish was the vice president of the local union representing Massaro.

The following is a brief summary of the allegations in Massaro's complaint.  Many of the facts of Massaro's claims relate to Defendant Johnson and are not directly related to Defendant McChurch or Papish.   Accordingly, the Court will only summarize the facts related to Johnson to the extent necessary to decide whether dismissal of McChurch and Papish's claims is warranted.

Defendant Johnson was one of Massaro's immediate supervisors at the EMCC.  Beginnig in the summer of 2004 and continuing through August 16, 2005, when Johnson was discharged, Johnson repeatedly made unwanted sexual advances toward Massaro and engaged in other verbal conduct of a sexual nature toward Massaro.   Massaro repeatedly made it clear to Johnson that those types of conduct were unwanted and unwelcome.   Specifically, Johnson regularly stayed in Massaro's work area, flirted with Massaro, and attempted to engage Massaro in discussions about homosexual sex.  This conduct continued despite Massaro telling Johnson that he was not gay and that he wanted this behavior to stop.   Johnson also made numerous inappropriate comments towards Massaro such as commenting that Massaro had "a nice butt", asking Massaro if he was out of breath because he had been lying down in bed with inmates, asking Massaro to talk to him about his homosexual fantasies, attempting to engage Massaro in conversations about watching the inmates in the showers and the size of the inmates' penises, telling Massaro that he

had imagined him in a hot tub with other men with "sperm floating around" and that is why Massaro's hair was so shiny, and many other sexually related comments and actions.

Approximately one month after the harassing behavior began, Massaro reported the behavior to McChurch, Papish, and Osborne.  McChurch, Papish, and Osborne allegedly told Massaro that Johnson was probably gay and "coming out" and nothing was done about it.  After being made aware of Johnson's conduct towards Massaro, Papish allegedly told Massaro "[y]ou can either confront him or suck him off, and you're not the type to confront him."  Papish then said "Something must have happened to you as a kid, some janitor, school teacher or priest must have touched you or broke it off in you."  Massaro also claims that Defendants failed to take timely and appropriate corrective action to stop the harassment and that Defendants repeatedly ridiculed Massaro because his appearance and manner did not fit the masculine male stereotype. Massaro also alleges that Defendants did not ridicule female employees whose appearance and manner did not fit the feminine female stereotype.

Massaro opposed Defendants' activities and complained to his supervisors.  After nothing was done to remedy the situation, Massaro complained about these activities to the Internal Affairs department in the Spring of 2005.  As a result of the complaints, McChurch claims that Defendants retaliated against him.  Specifically, Massaro was reassigned to a different shift (first shift) which was less favorable.  Additionally, Papish insisted that he be the union representative who accompanied Massaro to Massaro's interviews with Internal Affairs despite the fact that Papish was one of the perpetrators and even though Massaro requested a different union representative.  At the Internal Affairs interview, Papish laughed out loud as Massaro told the investigators his account of what was occurring.  Papish also repeatedly referred to Massaro, in person and over the intercom at work, as "Sgt. Dangle," which is a reference to a homosexual

character in the television series "Reno 911."  Papish asked Massaro is he wore "pink hot pants," asked Masssaro if he danced at and frequented gay bars, and called Massaro gay.  Finally, Papish tried to rub soiled inmate underwear on Massaro and told Massaro to "file an incident report about that."

Massaro also alleges that various Defendants threw Massaro's mail in the garbage, hid his employee uniforms, and slashed his tires.  Additionally, Massaro received numerous phone calls from EMCC employees telling Massaro not to report the behavior and received telephone calls from men using feminine voices who hung up when Massaro answered the phone.  In May 2005, the other officers began to treat Massaro differently by filing to cooperate with him, refusing to give him important information about inmates, yelling at him, stating that he was "wired," had a camera in his nametag, and suggesting that other employees should not talk to him.  Other officers allegedly called Massaro names such as "suck ass" and "Phony Tony."  On May 22, 2005, the roll call officer intentionally pushed another officer into Massaro, spilling coffee all over Massaro, and said "it couldn't have happened to a better person."

Defendant McChurch attempted to physically intimidate Massaro by kicking in the door of the administration office, almost hitting Massaro, and then standing in front of Massaro with his chest puffed out staring at Massaro.  After the Interal Affairs investigation began, Papish and McChurch demanded that Massaro lie to Internal Affairs about their knowledge of the harassment and leave their names out of it.  Papish demanded that Massaro meet with McChurch to "get the story straight."  McChurch called Massaro repeatedly to come over to McChurch's house.  When Massaro went to McChurch's house, McChurch told Massaro to lie about his involvement and threatened Massaro by showing him pictures of McChurch performing karate, and telling Massaro "I'm the best at karate, I'm a weightlifter, you need to listen to me."

Additionally, Defendant Osborne came to Massaro's home and insisted that Massaro meet with him and Papish.  At the meeting, Papish attempted to convince Massaro not to report the conduct and offered to help him get a lawyer and "get a lot of money out of this" if he cooperated. Moreover, Papish came to Massaro's home and attempted to intimidate Massaro into not reporting the behavior.

As a result of Defendants' conduct, Massaro was ostracized by fellow employees and subjected to a barrage of offensive behavior and comments destroying his relationships with co-workers and interfering with his ability to perform his job as a correctional officer in the dangerous environment of a prison.  Finally, Massaro contends that his response to the unwelcome sexual advances and other verbal conduct of a sexual nature by Johnson was a motivating factor in tangible employment action taken against him, including his transfer from one shift to another less favorable shift.  Notably, this shift change did not resolve Massaro's concerns because Massaro was still required to interact with Johnson on a regular basis.

Massaro's complaint includes claims that (1) Defendant Illinois Department of Corrections ("IDOC") violated Title VII when it created an intimidating and hostile work environment that affected the terms, conditions, and privileges of Massaro's employment in violation of 42 U.S.C. § 2000e; (2) Defendant IDOC violated Title VII when it retaliated against Massaro because Massaro opposed a discriminatory employment practice; (3) Defendants Johnson, McChurch, Papish, and Osborne violated 42 U.S.C. § 1983 when they deprived Massaro of his right to equal protection, his right to be free from gender discrimination, and his right to be free from government harassment; and (4) Defendants Johnson, McChurch, Papish, and Osborne violated Illinois state law when they intentionally caused Massaro to suffer severe emotional distress through their extreme and outrageous conduct.

Defendants McChurch and Papish filed the instant motion to dismiss claiming that this Court should dismiss the Section 1983 claims against McChurch and Papish because (1) Massaro did not suffer an adverse employment action; (2) Massaro cannot show that McChurch and Papish were directly and personally involved in any alleged violation of Massaro's constitutional rights; and (3) McChurch and Papish are entitled to qualified immunity.   Additionally, McChurch and Papish argue that Massaro's intentional infliction of emotional distress claim should be dismissed if this Court dismisses the Section 1983 claims because there would no longer be a federal claim pending before this Court.   In the event that this Court decides not to dismiss the federal claim or elects to maintain jurisdiction over Massaro's intentional infliction of emotional distress, McChurch and Papish argue that this claim should be dismissed because their conduct was not extreme and outrageous.

Massaro filed a response to Defendants' Motion to Dismiss.   As these issues are now fully briefed, this Order follows.

### STANDARD OF REVIEW

In resolving a motion to dismiss, this Court must consider all well-pled facts as true and must draw all inferences in favor of the non-moving party.   *Bontkowski v. First Nat'l Bank of Cicero,* 998 F.2d 459, 461 (7th Cir. 1993).   In ruling on a motion to dismiss, Courts consider whether relief is possible under any set of facts that could be established consistent with the allegations in the complaint.   *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).   This Court will dismiss a claim only if it is beyond doubt that no set of facts would entitle the Plaintiff to relief. *Chaney v. Suburban Bus. Div*., 52 F.3d 623, 627 (7th Cir. 1995); *Venture Associates. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 432 (7th Cir. 1993).

**DISCUSSION**

**A.      Count III – Section 1983 Claims**

Section 1983 creates a cause of action against "[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Johnson v. Snyder*, No. 04-3620, 2006 WL 861122, at *1 (7th Cir. Apr. 5, 2006) (*quoting* 42 U.S.C. § 1983).  Section 1983 is not itself a source of substantive rights, instead it is a means for vindicating federal rights conferred elsewhere.  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  The initial step in any Section 1983 analysis is to identify the specific constitutional right which was allegedly violated.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  Here, Massaro claims that McChurch and Papish deprived him of equal protection under the Fourteenth Amendment when they sexually harassed him based on his gender.

A cause of action for sexual harassment exists under both Title VII and Section 1983. *Trautvetter v. Quick*, 916 F.2d 1140, 1148–49 (7th Cir. 1990).  "A plaintiff wishing to sustain an equal protection claim of sexual harassment must show both 'sexual harassment' and an 'intent' to harass based upon that plaintiff's membership in a particular class of citizens – i.e. male or female."  *Id.* at 1149.  Here, McChurch and Papish argue that Massaro's claims against them should be dismissed because Massaro did not suffer an adverse employment action. Understandably, Massaro's use of the term "disparate treatment" in his Complaint may have led Defendants to conclude that Massaro is making a traditional disparate treatment employment discrimination claim, which would require Massaro to have suffered an adverse employment

action; however, in his response, Massaro clarifies that he is actually making a sexual harassment claim based on a hostile work environment claim.

The Seventh Circuit has held that the determination of whether a plaintiff can set forth facts to adequately allege the "sexual harassment" prong of the Section 1983 analysis is the same as the sexual harassment analysis used when addressing Title VII sexual harassment claims.  *Id.* A hostile work environment is created by conduct which has "the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment."  *Cooke v. Stefani Management Services, Inc.*, 250 F.3d 564, 566 (7th Cir. 2001) (*quoting Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). For hostile work environment sexual harassment to be actionable under Title VII, the conduct "must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.' " *Id.*  The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable. *Id.* at 567 (*citing Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22 (1993)).

Here, Massaro has pled facts sufficient to state a claim of sexual harassment based on a hostile work environment.   Massaro alleges that McChurch and Papish made numerous inappropriate sexually based comments towards Massaro, failed to take timely and appropriate corrective action to stop the harassment by Johnson, called Massaro inappropriate names, tried to rub soiled underwear on Massaro, attempted to intimidate Massaro, and demanded that Massaro lie to Internal Affairs.  Massaro also alleges that the conduct of McChurch and Papish resulted in Massaro being ostracized by other officers and employees and subjected him to a barrage of offensive comments and behavior, which destroyed his relationships with co-workers and

interfered with his ability to perform his job.  Finally, Massaro claims that McChurch and Papish frequently ridiculed Massaro for not appearing and acting in a stereotypical masculine manner and that McChurch and Papish did not ridicule female employees who did not appear and act in a stereotypical female manner.  Taken together, Massaro has alleged adequate facts to claim that McChurch and Papish subjected him to a hostile work environment.  Whether the conduct of McChurch and Papish was objectively and subjectively severe enough to alter the conditions of Massaro's employment is something that is not appropriately decided on a motion to dismiss.

Defendants' second argument is that Massaro's claims should be dismissed because McChurch and Papish were not personally involved in the sexual harassment.  However, Massaro has made sufficient allegations in his Complaint that McChurch and Papish were personally involved in creating or condoning the hostile work environment.  Massaro alleges that McChurch and Papish made inappropriate comments to him because he did not act or appear according to the typical masculine stereotype and that they ignored Johnson's conduct.  These allegations are sufficient to survive a motion to dismiss.

Finally, McChurch and Papish argue that Massaro's claim should be dismissed because they are entitled to qualified immunity.  In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the United States Supreme Court enunciated the "modern standard to be applied in qualified immunity cases."  *Auriemma v. Rice*, 895 F.2d 338, 341 (7th Cir. 1990).  The Court stated:

> Governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow*, 457 U.S. at 818.   The test for qualified immunity is "whether the law was clear in relation to the specific facts confronting the public official when [he or she] acted."  *Green v. Carlson*, 826 F.2d 647, 649 (7th Cir. 1987).  In deciding whether defendants will enjoy qualified

immunity, courts must determine (1) whether the plaintiff has asserted a violation of a federal right, and (2) whether the constitutional standards implicated were clearly established at the time in question. *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995), (*citing Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994)). The first issue is a threshold issue. If the plaintiff fails to state a violation of a federal right, then the plaintiff's claim fails altogether, and the court need not go on to decide whether the law was clearly established at the time of the offense. *See Marshall v. Allen*, 984 F.2d 787, 793 (7th Cir. 1993); *Zorzi v. County of Putnam*, 30 F.3d 885, 892 (7th Cir. 1994); *Eversole*, 59 F.3d at 717. However, raising the defense of qualified immunity on a motion to dismiss means that the only facts before the court are those alleged in the complaint. *Zoch v. City of Chicago,* No. 94-C-4788, 1997 WL 89231, at *44 (N.D. Ill., Feb. 4, 1997) (*citing McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th 1992)). In their Motion to Dismiss, Defendants claim that they are entitled to qualified immunity because they did not deprive Massaro of a constitutional right. They claim that the allegations against them only relate to harassment based on Massaro's perceived sexual orientation. Under Title VII, harassment based solely upon a person's sexual preference or orientation is not an unlawful employment practice. *Spearman v. Ford Motor Co*., 231 F.3d 1080, 1084–85 (7th Cir. 2000). However, in his response, Massaro makes clear that his claims are that McChurch and Papish discriminated against him, not because of his sexual orientation, or perceived sexual orientation, but because of his sex. Title VII prohibits discrimination because of one's sex. *Hamm v. Weysuwega Milk Products, Inc.,* 332 F.3d 1058, 1062 (7th Cir. 2003). Specifically, harassment based on a person's failure to adhere to sexual stereotypes is actionable. *Id.* at 1065, n. 5. Accordingly, Massaro alleged that Defendants violated his constitutional right to equal

protection when he alleged that McChurch and Papish ridiculed him for not fitting into the traditional masculine stereotype.

Interestingly, Defendants cite Judge Posner's concurrence in the *Hamm* case as support for their argument that the law relating to sexual harassment was not clearly established at the time that the incidents in this case took place.  In his concurrence, Judge Posner argues that the sexual stereotyping cases have gone "off the tracks" because the cases currently hold that Title VII protects "heterosexuals who are victims of 'sexual stereotyping' or 'gender stereotyping.'" *Id.* at 1066 (Posner, J., concurring).  Judge Posner goes on to argue that sexual stereotyping should not be a subclass of discrimination but should be considered as possible evidence of discrimination.  *Id.* at 1067.  Defendants argue that Judge Posner's disagreement with the current law requires this Court to find that the law regarding sexual harassment was not clearly established at the time that the events in this case took place.  However, Defendants' argument fails to recognize that Judge Posner clearly states that the current law protects individuals who are victims of sexual stereotyping.  In this case, Massaro claims that his constitutional right to equal protection was violated because of his sex when McChurch and Papish "frequently ridiculed [Massaro] for not (in his appearance and manner) fitting the masculine male stereotype."  As the law prohibiting sexual harassment based on sexual stereotypes was clear at the time that the incidents in this case allegedly took place, McChurch and Papish are not entitled to qualified immunity.

**B.     Count IV – Intentional Infliction of Emotional Distress**

Defendants also ask the Court to dismiss Massaro's intentional infliction of distress claim because they claim that Massaro has not met the very high standard for pleading a cause of action of intentional infliction of emotional distress under Illinois law.  To state a claim for

intentional infliction of emotional distress under Illinois common law, Massaro must allege that: (1) Defendants' conduct was extreme and outrageous; (2) Defendants intended to inflict severe emotional distress or knew there was a high probability that their conduct would cause severe emotional distress; and (3) Defendants' conduct did cause severe emotional distress. *See Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997); *Doe v. Calumet City*, 641 N.E.2d 498, 506 (Ill. 1994); *McGrath v. Fahey,* 533 N.E.2d 806, 809 (Ill. 1988).  Conduct is extreme and outrageous only if "the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency . . . ." *Public Finance Corp. v. Davis,* 360 N.E.2d 765, 767 (Ill. 1976); *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992).  Furthermore, "[m]ere insults, indignities, threats, annoyances, petty oppressions or trivialities are not actionable as intentional infliction of emotional distress."  *Public Finance Corp.*, 360 N.E.2d at 767 (quoting *Oates v. Discovery Zone,* 116 F.3d 1161, 1174 (7th Cir.1997)).  In the instant action, Massaro alleges that McChurch and Papish repeatedly made inappropriate comments towards him, tried to physically intimidate him, attempted to rub soiled underwear on him, and ridiculed him for his appearance.  Moreover, Massaro states:

> Defendants' conduct was extreme and outrageous, beyond all bounds of decency usually tolerated by a civilized society; Defendants either intended that this conduct should inflict severe emotional distress, or knew that there was a high probability that this conduct would cause severe emotional distress; and Defendants' conduct did in fact cause Plaintiff to suffer severe emotional distress.

(Pl.'s Cmpt. at 12.)  McChurch and Papish argue that, if true, their actions in engaging in "some name calling and perhaps homophobic bullying" do not amount to "extreme and outrageous conduct."  Although this may ultimately prove to be true, the fact remains that Rule 8(a) only requires Massaro to allege facts to put the Defendants on notice of his claims.  Massaro has done so and therefore Defendants' Motion to Dismiss Count IV of Massaro's Complaint is denied.

**CONCLUSION**

For the reasons set forth above, the Motion to Dismiss filed by Defendant McChurch and

Defendant Papish [#30] is DENIED.

ENTERED this 20th day of April, 2006.


s/Michael M. Mihm
_____
Michael M. Mihm
United States District Judge